Harris, J.
In the examination of the questions which this case presents, I propose first, to determine the capacity of the defendants McGillis and wife, and their children, the principal objects of the testator’s bounty, to take under the will, and then to examine the provisions of the will, and ascertain its legal effect, in reference to such capacity.
1, As to the capacity of McGillis and wife and their children to take under the will. Mrs, McGillis was born a citizen of the United States. While yet a minor she intermarried with a subject of Great Britain, but neither her marriage nor her residence in a foreign country constitutes her an alien. Whether, indeed, a citizen can, by any mere act of his own, dissolve his native allegiance and become an alien, is not definitively settled in this country. The question has been regarded as one of much difficulty as well as delicacy, and, though frequently discussed before the supreme court of the United States, it has never, I believe, been regarded as the leading point in the case presented, so as to call for the judgment of the court. But it has been decided by that court, that the marriage of a feme sole with an alien husband, does not produce a dissolution of her native allegiance. (Shanks v. Dupont, 3 Peters, 242.) The converse of this proposition has been held in this state, where an alien widow claimed to he endowed of the lands of *50 her deceased husband, who was a citizen. (Kelly v. Harrison, 2 John. Cas. 29. Mick v. Mick, 10 Wend. 379.) There is, therefore, no obstacle in the way of Mrs. McGillis taking as a devisee under the will.
But in respect to the husband, and the children of the marriage, it is otherwise. They were at the time of the testator’s death, aliens, and, of course, incapable of taking by devise, any interest in real property. (2 R. S. 57, § 4.) The statute declares, that the interest so devised shall descend to the heirs at law of the testator. But this disability does not extend to personal property. There is nothing to prevent these parties from taking the benefit of the provisions of the will in their behalf, as legatees.
2. We are next to examine the provisions of the will itself, with a view to determine their legal effect. And here the first question relates to the character of the devise to Mrs. McGillis. Subject to the “ limitations and poioers in trust therein expressed.the testator gives to her certain real and personal property specified in the first clause of the will, for her sole and separate use, during her natural life; and then, apprehensive that his declared purpose of giving his daughter such life estate might otherwise be defeated, he appointed her husband a trustee “ to take possession of all and singular the property devised to her, and to receive the rents, issues, interests and profits thereof, and to apply the same to her use, during her natural life, as she should direct.” What is the effect of this provision 1 Does it vest the legal estate, during the life of Mrs. McGillis, in her, or in her husband in trust for her 1 If in her, is the authority to receive the rents, &c. valid, as a power in trust merely ? There are no words in the will indicating an intention, or which can have the effect, of creating a trust estate. On the contrary, the obvious purpose of the testator was, to vest the title in his daughter, and, so far as consistent with her situation as a feme covert, to subject the property to her control. Hence the unequivocal terms employed: “ I give, devise and bequeath to my daughter Eliza,” “ To have and to hold all and singular the property both real and personal above described to my said *51 daughter Eliza“ Whereas in the preceding devise I have given a life estate to my said daughter Eliza.” On the other hand, there are no words indicating an intention to vest any title in the husband. His object, on appointing a trustee, the testator declares to be, that he may “ thereby secure to his daughter the enjoyment of the property, free from all claims and liabilities to which it might otherwise be subject.” For this reason, he proposes to appoint a trustee, not to take the legal title, but “ to take charge of the property “ to receive the rents, &c. and to apply the same as his daughter should direct.
Nor do I think a valid power in trust was created. The legal title being by the devise vested in Mrs. McGillis for life, it carried with it, as a necessary incident, the right to collect the rents and profits. If it were not so, the wife would hold the legal title in trust for her husband to collect the rents as trustee for her. This would be absurd. Indeed, I understand it to be an invariable rule, that a seisin of the legal estate, and the legal right to receive the rents and profits, are inseparable. A devise of the legal estate carries with it, by necessaty implication, the right to the rents and aufit (Wood v Wood. 5 Paige, 596. Knight v. Wetherwax, 7 Id. 152) On the hand, a devise of the rents and profit::, of land, is a On O nf the land itself. (4 Kent, 536.) My conclusion, üieroítoo 0, that Mrs. McGillis, under the first clause of the will, took a life estate in the property specified, in her own right, and that no valid trust, or power in trust, was vested in the husband.
I think it very clear, too, that Mrs. McGillis took an absolute life estate in the property given her by the codicil. She ivas to hold the gifts, devises and bequests made, or given to her by the codicil, subject to the same restrictions, limitations and powers in trust, specified in the will. It was, obviously, the intention of the testator to connect these latter devises and bequests with those already made, and to bring them within the provisions of the first clause of the will. But for their alien-age, the husband and children would have taken the same *52 estate in the real property devised to Mrs. McGillis by the codicil, as they would have taken had it been included in the first clause of the will. And as their alienage does not affect their right to take personal property, they do take under the codicil the same interest in the personal property there bequeathed to Mrs. McGillis for life, as they take under the provisions of the first clause of the will, in the personal property there bequeathed.
Two other questions of considerable difficulty have been raised in relation to specific portions of the testator’s estate. Each of these questions, though they are kindred in their character, will require a distinct examination:
1. The property described in the will as a lot in what was formerly called “ the Colonie,” on the west side of Broadway, <fcc. and which by the will is devised to Mrs. McGillis, was, after the execution of the will by the testator, sold by him. For a portion of the lot he had received payment, and, for the price of the residue, he had taken the bond of Mr. Kirk, the purchaser, for $3,000, secured by a mortgage upon the lot, which bond and mortgage was a part of the testator’s estate at the time of his death. The question is, whether the sale of the lot was a revocation of the devise, or whether the bond and ««migage taken for the purchase money, took the place of the lot 1 Upon this question it might be enough for me to say, that it has been settled by a decision in the late court of chancery, where this precise question was the only point in judgment, and where it was carefully and ably considered. (See Adams v. Winne, 7 Paige, 97.) In that case the bill was filed by two daughters of the testator, who, by his will, had devised to them certain real estate. After the execution of the will, the testator had sold one of the lots so devised, and received from the purchaser his bond and mortgage for the purchase money. The daughters claimed the bond and mortgage under the devise of the lot. They insisted, as it is insisted here, that by taking a mortgage upon the same lot for the purchase money, simultaneously with the execution of the deed, the testator’s interest was not wholly divested, and therefore, the de *53 vise was not revoked. (2 R. 8. 65, § 47.) The chancellor held that the sale of the lot, and taking for the purchase money a bond and mortgage, was such a destruction of the specific property devised as to amount to a revocation of the devise.
But I have been invited by the ingenious and well constructed argument of the counsel for the defendants McGillis and wife, to examine the question as though it was open for adjudication. Such examination has led me to the same conclusion at which the chancellor arrived in Adams v. Winne.
Previous to the adoption of the revised statutes, the law, in its strictness, required that the interest which the testator had in the subject of the devise when he made his will, should remain unchanged until his death. Any, the least alteration of such interest, wrought a revocation of the devise. (Walton v. Walton, 7 John. Ch. 271.) The effect of this rule was in many instances, to defeat the intention of the testator. To obviate this result, and “ prevent a constructive repeal of the statute of wills,” the legislature upon the recommendation of the revisers, changed the rule as it had previously existed, in three special cases. It was declared by the 45th section of the act relating to wills, (2 R. S. 64,) that an agreement to sell lands devised by a will previously executed, should not be deemed to be a revocation of such previous devise. By the next section, it was declared that a charge or incumbrance upon such land, created for the purpose of securing the payment of moneys, or the performance of a covenant, should not work such revocation : and by the 47th section it was declared in substance, that no devise should be deemed to be revoked by any subsequent act of the testator which should have the effect to alter, but not wholly to divost, his estate or interest. It is under this last provision of the statute, that the learned counsel insists that the devise should be supported. This of course depends upon the question, whether by the transaction with Kirk, the estate or interest of the testator was wholly divested 1 Regarding this as an open question, it is by no means free of embarrassment. The testator can not, in an unqualified sense of the term, be said to have parted with all his in *54 terest in the lot. There is great force and plausibility in the argument, that the transaction amounted to nothing more than a conditional sale. It is a familiar rule that when two instruments are executed, being parts of the same contract, they constitute but one act, and are to be construed and take effect together. It is upon this principle that it has been decided that where a deed and a mortgage for the purchase money are executed simultaneously, the wife of the purchaser is not entitled to dower as against a party claiming under the mortgage. (Stow v. Tifft, 15 John. 458. Holbrook v. Finney, 4 Mass. 566.) But even in the case of dower, were the question res integra, I should have considerable difficulty, independent of the equitable doctrine which gives to the vendor a lien for the purchase money without any mortgage, in maintaining the soundness of the positions established by the decisions. The true nature of the transaction, and the intent of the parties is, that the vendor shall divest himself of all his title in the premises sold, and that it shall be vested in the purchaser. On his part he becomes the debtor of the vendor. The one has changed his real property into a debt. The other has become invested with all the rights which the vendor had, as owner of the property. As owner, he may maintain trespass, and defend his possession, even as against the mortgagee. His interest, and not that of the mortgagee, is liable to execution. He alone can convey a title; and his conveyance alone, will vest an absolute title in his grantee, subject only to be defeated by enforcing the lien of the mortgage; all the interest which the vendor has, is the payment of his debt. In England, the mortgagee is considered as having the legal title, and even here, until the adoption of the revised statutes, the mortgagee might treat the mortgagor as his tenant, and maintain ejectment for the recovery of the premises. “ But since the action of ejectment by the mortgagee is abolished, a court of law,” says Chancellor Kent, (4 Kent, 157,) “ would seem to have no jurisdiction of the mortgagee’s interest. He is not entitled to the possession, nor to the rents and profits. He is turned over entirely to the courts of equity.” The mortgage is no longer con *55 sidered as conveying a title. All the mortgagee can do is, after forfeiture, to invest himself with the legal title, by a foreclosure and sale. (Jackson v. Myers, 11 Wend. 533.) In Phyfe v. Riley, (15 Id. 248,) Savage, Ch. J. said, “in courts of law, in this state particularly, the mortgagor is considered the true owner against all the world except the mortgagee: and even the mortgagee has been considered merely an incumbrancer, until forfeiture of the condition by non-payment of the money. Then and not till then he is considered as having an interest in the land.” In Jackson v. Willard, (4 John. 41,) where the doctrine was first settled in this state, that the mortgagee has no interest which is the subject of a sale upon execution, Kent, Ch. J. says, until foreclosure, or at least until possession taken, the mortgage remains in the light of a chose in action. It is but an incident attached to the debt. In Jackson v. Bronson, (19 John. 325,) the court said : “ It is now well settled that the mortgagee has a mere chattel interest. The mortgagor is considered as the proprietor of the freehold. The mortgage is deemed a mere incident to the bond or personal security for the debt: and the assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered in law as a nullity.”
If this be so ; if when the testator executed his deed to Kirk, and took back his bond for the purchase money, secured by a mortgage upon the premises, he retained “ no interest in the land:” if his mortgage was to be regarded “ in the light of a chose in action,” as but “an incident attached to his debt;” how can it be said that he was not “ wholly divested” of his estate and interest in the property? The reform in the law relating to implied revocations was, undoubtedly, much needed. Had the revisers applied to it a still bolder hand, I am inclined to think they would have rendered a still more valuable service. In the case before us, there is very little reason to suppose, that it was the design of the testator, when lie converted the lot he had devised to Mrs. McGillis, into a bond and mortgage, that the security should take a different direction. But it is the office of a judge to declare the law, strictly and truly as he finds *56 it to be, and not to amend or improve it. It is not denied that, but for the provisions of the statute already noticed, the transaction would have amounted to a clear revocation of the devise. The effect of the sale to Kirk, as I understand it, was, not merely to alter but wholly to divest the testator’s estate and interest in the subject of the devise. With this view of the law, I am bound to declare, though it may, as there is reason to fear it will, defeat the testator’s purpose, that the conveyance of the lot in the Colonie to Kirk after the will was executed, was a revocation of the devise of that lot by the will, and that the bond and mortgage not having been effectually disposed of by the will, their proceeds, when collected, will be liable to distribution according to law.
2. After the execution of the will the bond and mortgage against Jesse Buel was foreclosed. Upon ihe foreclosure sale, the premises were purchased by William Smith, who executed a new bond to the testator for his debt, secured by a new mortgage upon the same premises. Upon the death of the testator, there was found among his papers, a memorandum, in his own handwriting, declaring the Smith bond and mortgage to be but a renewal of the Buel bond and mortgage, and that it was his intention that it should pass to Mrs. McGillis under his will. Has this change in the security extinguished the legacy 1 or if it otherwise would, can the memorandum of the testator, clearly showing that it was the intention of the testator that it should not have this effect, save the legacy ? These questions I proceed to consider :
Some confusion has arisen on this subject, from the failure even of elementary writers, to keep in view the distinction which I suppose exists between what is, strictly, the ademption of a legacy and its satisfaction. Ademption, as I understand the term, is only predicable of a specific legacy. It takes place, as the term imports, when the thing which is the subject of the legacy, is taken away, so that when the testator dies, though the will purports to bestow the legacy, the thing given is not to be found to answer the bequest. It has been extinguished, if a specific debt, by having been paid to the testator himself; if an *57 article of property, by its sale or conversion. This is ademption—whether or not it has taken place is a conclusion of law, and does not depend upon the intention of the testator. Whether or not a particular legacy is a specific or a general pecuniary legacy, is, indeed, very much a question of intention. It is not always easy to determine whether a testator intended to give, to the object of his bounty, a specific thing, as some specified debt then due to him, or a general legacy to be paid out of such specified debt. In the one case, the collection of the debt by the testator would be an ademption of the legacy. In the other, the legacy would be a charge upon his estate generally. Upon this subject, Chancellor Kent remarks that “ the courts are so desirous of construing the bequest to be general, that if there be the least opening to imagine that the testator meant to give a sum of money, and referred to a particular fund only as that out of which he meant it to be paid, it shall be construed to be a pecuniary legacy, so that it may not be defeated by the destruction of the security.” (Walton v. Walton, above cited.) When this question is settled, and it is determined that it was the intention of the testator to give a specific thing, and not a general legacy, then the intention of the testator has nothing further to do with the question of ademption. This is entirely a rule of law, and the rule is, that the legacy is extinguished, if the thing given is gone.
Satisfaction, on the other hand, is predicable, as well of a general, as a specific legacy. It takes place when the testator, in his lifetime, becomes his own executor, and gives to his legatee what he had intended to give by his will. Thus it may happen, in respect to a specific legacy, that it has been both adeemed and satisfied; adeemed, because the thing is gone when the testator dies; satisfied, because the legatee has received it. And this, unlike that of ademption, is purely a question of intention. Upon this question, with a view to ascertain whether, in fact the testator, in making an advance to his legatee, intended it as a satisfaction, either-m toto or pro tanto, extrinsic evidence is admissible. It is to this class of cases that Mr. Mathews refers, when he says “ extrinsic evidence is *58 not only admissible to repel a presumptive ademption, but is also allowed to fortify the presumption when impeached.” (Mathews' Pres. Ev. 140.) It is observable that this writer has here failed to make the distinction which I have supposed to exist between the ademption and the satisfaction of a legacy, using the term ademption when satisfaction was evidently intended. (See Story's Eq. §§ 1100, 1102, 1111, 1112, 1114. Preston on Leg. tit. Parol Evidence, Ademption, Satisfaction. Ward on Leg. 261 to 268, tit. Implied Revocations.) I am indebted to Mr. Preston’s admirable treatise for the distinction I have made between the terms ademption and satisfaction. I adopt it, because it tends to perspicuity. It is necessary to say, however, that this distinction has not been observed by other standard writers. Both Roper and Ward employ the term ademption as applicable to both classes of legacies. They treat of the ademption of both pecuniary and specific legacies. Judge Story also seems to prefer the latter classification. (§ 1111.) But whichever is adopted, the same thing is intended; and the rules of evidence which I have stated to be applicable to the ademption and satisfaction of legacies, are equally applicable to the ademption of specific and pecuniary legacies.
With these definitions and distinctions before us, the determination of the particular questions in hand is not difficult. If there was any doubt whether in giving to Mrs. McGillis the Buel bond and mortgage, a specific or pecuniary legacy was intended, extrinsic evidence might have been received to ascertain the character of the legacy. But here there is no question —it is plainly a specific legacy. The bequest is of that peculiar debt, and not of a sum of money to be paid out of that debt. Had the testator received payments upon the bond and mortgage, such payments would have constituted an ademption pro tanto. The balance, if he had still retained the bond and mortgage, when he died, would have passed to the legatee. But the debt bequeathed was, in fact, fully paid to the testator. The bond and mortgage were satisfied by the foreclosure sale. The thing bequeathed was gone, and the legacy was adeemed. The fact that the same money which satisfied Buel’s debt has *59 been invested in a new security upon the same property, cannot operate to save the legacy. Whether the testator was paid in money or a new security, or whether such payment was invested in another bond and mortgage, upon the same or other premises, cannot affect the right of the parties. In either case, the thing described in the will, and for which the legacy calls, no longer exists. The legacy is therefore adeemed. (See Baker v. Raynor, 5 Madd. 217. Purse v. Snaplin, 1 Atk. 414. Barton v. Cook, 5 Ves. 464. Humphrey v. Humphrey, 2 Cox, 184. Pest v. Camelford, 3 Bro. C. C. 170. Sibley v. Perry, 7 Ses. 522. Carlton v. Griffiths, Burr. 554. Perkins v. Mickelthwaite, 1 P. W. 275. Coppin v. Ferryhough, 2 Bro. C. C. 297. Drinkwater v. Falconer, 2 Ves. 626. Roome v. Roome, 3 Atk. 180. Carte v. Carte, Id. 176. Abney v. Miller, Id. 597. Manwood v. Turner, 3 P. W. 166. Pierson v. Stone, 1 Atk. 479. Arnold v. Arnold, Dick. 645. Ashburn v. McGuire, 2 Bro. C. C. 110. Hayes v. Hayes, 1 Keen, 97. Ashe v. Beary, 1 Beat. 255. Colleton v. Garth, 6 Sim. 19. Gardner v. Hatton, Id. 93. Gilbreath v. Winters, 10 Ohio, 64. Cogdall's Ex. v. Hiss Widow, 3 Dessau. 368. White v. Winchester, 6 Pick. 48.)
All these cases unite in asserting the rule, that if a specific legacy do not exist at the death of the testator, it is adeemed. It is a rule which prevails, without regard to the intention of the testator, or the hardship of the case. In this very case, there can be no doubt, that the real purpose- of the testator will be defeated, and the ademption of the legacy will operate as a hardship upon the legatee. But the law is too firmly settled to admit of relaxation, however peculiar or pressing the circumstances. The thing given is gone, and no court is at liberty to substitute a different thing for that which the testator had himself given.
The other questions which have been raised may be disposed of in a few words. By the bequest of the moneys of which the testator should die possessed, to Mrs. McGillis, she became entitled t.o the cash, using the term in its popular sense, which at the time of his death the testator had in his possession or de *60 posited in bank, and to nothing else. (Mann v. Executors of Mann, 1 John. Ch. 231.) The Kirk bond and mortgage, the Smith bond and mortgage, the rent due from Toole, and the insurance money due upon the policies upon the Market-street buildings, were all debts due to the testator at the time of his death, and are undisposed of by the will.
Nor can the bequest of “ all bonds and mortgages for sales already made or hereafter to be made of lands in the county of Warren” be construed to embrace contracts for the sale of such lands where no deeds had been executed. Such lands will pass under the general devise in the second paragraph of the codicil.
There must be a decree declaring the construction of the will according to these principles, and reserving to any of the parties the right to apply to the court hereafter for such further directions as may be deemed necessary. The decree may also, if it is desired, contain the necessary provisions for passing and settling the accounts of the executor, and the distribution of the estate.
I think the costs should be charged upon that portion of the estate which has not been disposed of by the will. But as nothing was said, in relation to the costs, upon the argument, the parties, if this disposition of the costs is not assented to, may be heard upon that question, upon the settlement of the decree.