DOUGHTY *vs.* STILLWELL.

*In the matter of the Estate of* SAMUEL STILLWELL, *deceased.*

THE testator having left a residue undisposed of by his will, and leaving surviving him a widow, nephews and nieces, grand-nephews, grand-nieces, and no other next of kin.—Held that the widow took a moiety of the residue, and $2000 besides, under the Statute of Distributions; and that the remainder should be distributed among the nephews and nieces; there being no representation among collaterals after brothers' and sisters' children, and the grand-nephews and grand-nieces not being entitled to any distributive share.

Where the will directed the amount of a certain bond to be collected three years after the decease of the testator's wife, and divided among certain legatees, and the testator subsequently took from the obligors, in lieu of the first bond, an assignment of another bond and mortgage of equal amount, which, at his death, remained among his assets uncollected.—Held that the legacies were general, and were not adeemed.

Whether a specific legacy be adeemed by a change of the particular form in which the thing given exists, depends upon the terms of the gift, the intention of the testator, the extent or nature of the alteration, and the circumstances attending it.

A bequest of the principal or income of a fund, to be paid *after the decease of the testator's wife,* to a stranger, not of kin to the testator, does not raise a life-estate, by implication, in the testator's wife.

CHARLES EDWARDS, *for the Widow.*
D. M. COWDREY, *for Legatees.*
A. CRIST, *for Claimants as next of kin.*

THE SURROGATE. The testator having left a large residue of his personal estate undisposed of by his will, it becomes necessary on the final accounting of the executor,

to direct its distribution. The deceased left surviving him a widow, nephews and nieces, grand-nephews and grand-nieces, and no other next of kin. The grand-nephews and grand-nieces claim a share of the residue. There being no descendant, parent, brother or sister of the testator living at the time of his death, it is very clear that the last clause of the third subdivision of the 79th section of the statute, relating to the distribution of intestates' estates, is applicable to the disposition of the residue in question. By the first portion of that subdivison, it is provided that, " if the deceased leave a widow, and no descendant, parent, brother or sister, nephew or niece, the widow shall be entitled to the whole surplus." If there had been no nephews or nieces, then, in the present case, the grand-nephews and grand-nieces would not have been entitled, but the whole surplus would have gone to the widow. The section proceeds, however, " but if there be a brother or sister, nephew or niece, and no descendant or parent, the widow shall be entitled to a moiety of the surplus as above provided ; and the whole of the residue where it does not exceed two thousand dollars ; if the residue exceed the sum, she shall receive in addition to her moiety, two thousand dollars ; *and the remainder shall be distributed to the brothers and sisters and their representatives.*" The words " brother *or* sister, nephew *or* niece," are grammatically disjunctive, and " brothers and sisters, *and* their representatives," of necessity must be construed distributively (*Stanley* vs. *Stanley*, 1 *Atkyn.*, 455); the case covered by this provision, therefore, manifestly arises whenever either a brother or a sister, or a nephew or a niece, all or one of these classes, happen to be surviving, and there is a widow, but no descendant or parent. The deceased having left no brother or sister, the nephews and nieces stand " *their representatives,*" under the letter of the statute. If the widow had not been living, the same result would have flowed from the fifth subdivision, which, in that contingency, gives the surplus " to the *next* of kin, in *equal* degree to the de-

ceased, and their legal *representatives*." Had the statute stopped here, the grand-nephews and grand-nieces would have taken by representation. But although in the lineal descent there is no restriction upon the rule of representation, the statute cuts it off among collaterals. "No representation shall be admitted among collaterals, after brothers' and sisters' children." (*Sub.* 11.) The only exception to this limitation is that in favor of the children of brothers or sisters of the intestate, and save in that single instance, there is no representation at all among collaterals.

Our act contains substantially the same provisions as those of 22 & 23 *Car.*, II., *c.* 10 ; 29 *Car.*, II., *c.* 3, § 25, and 1 *Jac.*, 11, *c.* 17, § 7, and the construction I have given to the restriction upon representation among collaterals accords with the current of the decisions. (*Williams on Executors*, 1299 ; *Toller*, 383.) The policy of the Statute of Distributions is generally, after providing for the widow, children, father, and mother, to give the estate to the *next* of kin in *equal* degree. Where the claimants are of *unequal* degree, the *nearest* of kin must take the whole, unless the remote class can come in by representation, which, as I have seen, is prohibited by the statute as to collaterals, except in the solitary case of brothers' and sisters' children. (*Hallett* vs. *Hare*, 5 *Paige*, 316.) There is nothing in the 9th and 10th subdivisions of the 79th section, which conflicts with this view ; their object is not to declare *who* shall be entitled to distributive shares, but *what* the shares shall be in all cases of equality or inequality of degree of kindred.

It follows that the surplus remaining in the hands of the executor, as to which the deceased died intestate, must be distributed, after paying a moiety and two thousand dollars besides to the widow, among the nephews and nieces of the testator who were living at his decease, and the representatives of such of them as have since died. The children of nephews and nieces who died before the testator, take nothing.

In the codicil to his will, the testator directed as fol-

lows : " It is my will that the bond which I hold from the trustees of the Methodist Society in the city of New-York to secure the payment to me of six thousand dollars, with interest on the same at the rate of six per cent. per annum, payable half yearly, shall remain uncollected for three years after the time of the decease of my wife Elizabeth, when the said amount shall be collected and divided ; and I do give and bequeath the same as follows, viz. : One thousand dollars thereof to the Methodist Society aforesaid; one thousand dollars thereof to the Rev. William S. Still-well; five hundred dollars thereof to the Rev. Hiram La-motte; five hundred dollars thereof to Mr. Thomas La-motte of Scoharie County, State of New-York; one thousand dollars thereof to Eliza Earl of Orange, Essex County, New-Jersey; one thousand dollars thereof to William S. Stillwell of Portsmouth in the State of Ohio; one thousand dollars thereof to Samuel S. Powell of the city of Brooklyn; and it is my will that the income thereof shall, from and after the time of the decease of my wife Elizabeth, be divided in like proportion among the said legatees, and paid to them half-yearly."

After the execution of the codicil, the Methodist Society, of which the testator was a member, sold their church and property to the Emanuel Congregation, taking a bond and mortgage of $6000, for consideration money, which were assigned to the testator by the Methodist Society, who thereupon received back their bond. The bond and mortgage of the Emanuel Congregation, taken in lieu of the other, remained uncollected among the assets of the testator at the time of his death. The question is, whether the legacy is general or specific, and if the latter, whether it has failed by ademption.

It is no easy task to settle the boundary line of specific and general legacies, so nice are the distinctions upon which many of the cases have turned, while the opinions of the most eminent judges have been found in conflict upon important points, material to the consistency and har-

mony of the law on this subject. "It is the humiliation of the bench," says Chancellor Dessausure, "perhaps of the human mind, to perceive Judges arrayed against Judges, opinions against opinions. Lord Macclesfield, Lord Camden and Lord Thurlow, advocating one principle and decreeing solemnly under it; and Lord Talbot, Lord Hardwicke and a later Chancellor, holding an opposite opinion, or decreeing differently on shades of difference in the cases." It seems, however, to be agreed, that no legacy is specific unless demonstrably so intended, and that the Courts will generally incline in favor of considering doubtful bequests, general legacies, chargeable upon the security named, as the fund first to be applied. (*Kirby* vs. *Potter*, 4 *Vesey*, 750; *Chaworth* vs. *Beech*, *Ibid.*, 562; *Deane* vs. *Test*, 9 *Vesey*, 146.) I am far from being clear as to the testator's intention to make the legacies in question specific, and that it was not his design simply to provide a fund out of which they were to be paid. It is true he describes a particular bond, and directs when it shall be collected, that is, not till three years after the death of his wife; but he says, "the said amount," referring to the sum of "six thousand dollars," "to secure the payment" of which the bond was given, "shall be collected and divided, and I do give and bequeath the same as follows." Now it is to be observed here, that the bond itself is not given, the executor is directed to collect the amount, and the testator then proceeds to give and bequeath the amount. The gift is not contained in the direction to collect and divide, but is separate, "and I do give and bequeath the same," i. e., "the said amount," "six thousand dollars." In *Barker* vs. *Rayner*, 2 *Russ.*, 125, the Chancellor said, "If there be a gift of a sum of money, and the testator points to a fund, not for the purpose of giving the fund, *but for the purpose of showing that the money to arise from the fund is to go to the legatee as money*, the cases would authorize me to say, that the intention being to give the money, the legatee is not to lose the benefit intended for him, even if the money

should not remain in that fund, and its ceasing to remain in that fund would not amount to an ademption." It is worthy of consideration, that the legacy now under discussion does not divide the proceeds of the bond into aliquot parts, but names precise sums to be given to the legatees. This approximates the case to that of *Smith* vs. *Fitzgerald*, 3 *Vesey & Bea.*, 5. There, the testator recited the existence of a debt of £10,000, and then said, "should the whole of this sum be received at stated periods, I give and bequeath out of it, £1000 to B., £1000 to C., &c.;" Sir Wm. Grant held these to be general legacies, stating that "legacies might be specific in one sense and pecuniary in another; specific as given out of a particular fund, and not out of the estate at large, pecuniary as consisting of definite sums of money and not amounting to a gift of the fund itself, or any aliquot part of it." In *Le Grice* vs. *Fench*, 3 *Meriv.*, 50, the same Judge held that a legacy of " £500, out upon mortgage," was not adeemed, the money having been called in by the testatrix. "The thing given," he says, "is not the mortgage, but the money. It is the *said sum* of £500 that she gives. What is the said sum? That sum of £500 which belonged to her and her mother, and which at a given time was out upon mortgage. Whether it remained out upon mortgage at the time of the testatrix's death, appears to me to be a matter of indifference. The circumstance is no ingredient in the gift, either by way of condition or of inherent description. I am therefore of opinion the legacy is due."

Where the testator gave *five hundred pounds which Lady C. owed him by bond* (*Pawlet's Case, Raym.*, 335); or *one thousand pounds out of certain lands* (*Saville* vs. *Blacket*, 1 *P. Wms.*, 778); or directed his *mortgages, bonds, and notes, stating the amount, to be vested in trustees* (*Attorney General* vs. *Parkin., Amb.*, 566); or where he gave *a thousand pounds out of the produce of a certain estate he had contracted to buy* (*Fowler* vs. *Willoughby*, 2 *Sim. & Stu.*, 354); or *fourteen hundred pounds for which he*

had sold his estate that day (*Carterel* vs. *Carterel*, 2 *Bro. C. C.*, 114); or *the money arising on a bill of exchange for £1500* (*Coleman* vs. *Coleman*, 2 *Vesey*, 639); or £1000 *out of his reduced bank annuities three per cents* (*Kirby* vs. *Potter*, 4 *Vesey*, 748); or *four thousand pounds to be paid by and out of the moneys which were due and owing from A. D.* (*Roberts* vs. *Pocock*, 4 *Vesey*, 150); or *two thousand pounds to be paid out of the four per cent. consolidated annuities in the Bank of England* (*Deane* vs. *Test.*, 9 *Vesey*, 146); or *five thousand pounds, which he subsequently declared were then vested in certain bonds* (*Gillaume* vs. *Adderley*, 15 *Vesey*, 385); or he directed his executor *to draw* £600 *from the bank, that being the whole amount there, in stock, and to divide it among certain persons* (*Taylor* vs. *Martindale*, 12 *Sim.*, 158); in all these cases, the bequests were considered as general and not specific legacies. I am aware there are decisions of great weight, not reconcilable with these, but some of the most serious of them are cited by Chancellor Kent (*Walton* vs. *Walton*, 7 *J. C. R.*, 262–3), as tending to establish the distinction, that while on the one hand " if the legacy is meant to consist of the *security*, it is specific, though the testator begins by giving the sum due upon it," so on the other hand, " the Courts are so desirous of construing the bequests to be general, that if there be the least opening to imagine the testator meant to give a sum of money, and referred to a particular fund *only*, as that out of which he meant it to be paid, it shall be construed pecuniary, so that the legacy may not be defeated by the destruction of the security." The same conclusion was attained by Chancellor Dessaussure, after a critical and learned analysis of the cases. (*Executors of J. Cogdill*, 3 *Dessaus.*, 384; *Roper on Legacies*, 234.)

Upon the whole, I think I should be justified upon the authority of *Smith* vs. *Fitzgerald*, and *Le Grice* vs. *Finch*, in holding these legacies general. But there seems to me to be other and sufficient ground to support the claim of the legatees. Whether a legacy was adeemed or not, de-

pended in the civil law on the intention of the testator. (*Swinborne*, *Pt.* 7, § 20.) Lord Thurlow (*Stanley* vs. *Potter*, 2 *Cox.*, 180), denied this doctrine, and said that the idea of determining upon an ademption from the *animus adimendi*, could not be sustained. Upon this position Chancellor Kent observes (7 *J. C. R.*, 264), that it is to be " taken with considerable qualification ; and that it is essentially a question of intention, when we are inquiring into the character of the legacy, upon the distinction taken in the civil law, between a demonstrative legacy, where the testator gives a general legacy, but points out the fund to satisfy it, and where he bequeaths a specific debt. In *Coleman* vs. *Coleman*, Lord Loughborough put the question of general or specific legacy entirely on intention." I do not propose to examine this proposition further than to advert to a class of cases, which show that even a specific legacy is not always destroyed by the change of form in its substance ; that the dry abstract doctrine of a change in the form effecting an extinction of the gift is still measurably subject to the question of intention, and the Court will therefore look into the circumstances attending the change, and sometimes follow the substance, the gift still attaching in its new shape. In the civil law, even where there was a specific bequest of a fund, at the time invested in a particular way, and it was called in, but the testator " laid it up and safely kept it for the legatary," the gift was not revoked. (*Swinborne*, *Pt.* 7, § 20.) In *Backwell* vs. *Child*, *Amb.*, 260, a gift of a certain proportion of the profits of a partnership was held not to be adeemed by the expiration of the partnership term, and a renewal of the articles under other conditions. In *Ashburner* vs. *MacGuire*, 2 *Bro. C. C.*, 108, the legacy was decreed to attach to dividends to accrue on a bond debt, the obligor having become a bankrupt. In *Basan* vs. *Brandon*, 8 *Simon*, 171, the alteration of the state of the specific fund by the agent of the testator, without authority, was decided not to adeem a specific legacy of a part of that fund. In *Bronsdon* vs.

*Winter, Ambler*, 59, the conversion of stock into annuities by act of Parliament (*Partridge* vs. *Partridge, Cas. Temp. Talbot*, 227 ; *Avelyn* vs. *Ward*, 1 *Vesey, sen.*, 426 ; *Drink-water* vs. *Falconer*, 2 *Vesey, sen.*, 625) ; and in *Dingwell* vs. *Askew*, 1 *Cox*, 427, the transfer of stock from the names of trustees to the name of the testatrix, were held not to adeem the legacies. In *Pulsford* vs. *Hunter*, 3 *Bro. C. C.*, 416, the *value* of certain assets then in the possession of B. were given, which at the time consisted of navy bills, and was afterwards altered to exchequer bills, and the new shape in which the fund was placed, did not prevent the bequest attaching. In *Stout* vs. *Hart.*, 2 *Halsted*, 414, the legacy was, of " all the money due on a bond against P. & G. ;" the testator, at the request of one of the obligors, accepted another bond in lieu of the first, and though the legacy was considered specific, it was not held to be adeemed. In *Walton* vs. *Walton*, a case I have already cited, Chancellor Kent decided that an act of the Legislature, changing the character of certain stock, was not an ademption ; and in *Gardner* vs. *Printup*, 2 *Bar. S. C. R.*, 83, a legacy of the " proceeds" of a bond and mortgage, after a foreclosure and sale of part of the premises, and a new bond and mortgage for part of the consideration, seems to have been thought to have attached to the new bond and mortgage as the " proceeds" of the former. The principle of these decisions seems to be, that if the fund, instead of being destroyed, remain the same in substance, with unimportant alterations, such slight variations will not adeem the bequest. They show, even in the cases where the change has taken place by operation of law, or without the consent of the testator, that the naked doctrine of ademption, wherever the thing does not exist as described in the will, and as existing at that date, is not universal, but reference must be had to the circumstances attending such change as has occurred, and the acts of the testator in that connection. Our statute has put an end to a fruitful source of litigation and perplexity on the subject of implied revocations. An estate

or interest bequeathed in property, is not adeemed or revoked by a subsequent alteration, unless it be wholly divested, but the bequest passes to the legatee the actual estate or interest in its altered condition. (2 *R. S., p.* 125, 3*d ed.*, § 39.) This section contains the spirit of the rule which I think applicable to the case before me. The testator substantially bequeaths the sum of six thousand dollars, then secured by a certain bond, and directs his executor to divide the amount, when collected, among certain legatees in certain sums. The fund then secured by a certain bond, he afterwards secures by another bond and mortgage; the money is not paid, only a new security is taken, in its nature growing out of the former, being a lien upon the property of the original debtor which had been sold. Had the legacy in its phraseology been limited to *the bond, the security itself,* the case would have been more doubtful; but he gives the *amount,* and the amount *when collected,* thus affording room, without any great strain, to regard the substituted security as the proceeds, or representative of the amount of the first bond, and to look upon the proceeds of the new security, when realized by the executor, as in substance the very amount given by the testator *when collected.* I cannot say that there has been such a change here as to annihilate the fund, and extinguish the legacy, when the testator has not pinned down the bequest to the *very bond* itself, so rigidly, that when the security is gone, the whole subject of his bounty is lost. The same sum of six thousand dollars, still remains due. It has never been paid in and reinvested, nor mingled with the testator's other funds, nor reduced in amount, nor affected in any other way, except that the bond which once secured it, is discharged, and another substituted in its place, so that when collected by the executors, it will substantially be the amount originally secured by the bond mentioned in the codicil. I am of opinion, therefore, that the legacy attaches to the bond of the Emanuel Congregation, and that when it is paid, the sums payable to the several legatees, must be discharged accordingly.

SAME CASE.

The testator, after devising to his wife some real estate in fee, and bequeathing to her his household furniture, then gave her also a life estate in his dwelling-house, together with " the clear income" of all his real estate, except certain lands in Broome county. In a codicil, he made certain bequests as follows:

1. "I give and bequeath to Samuel S. Doughty (the executor), the bond and mortgage, made and executed by. Edward Doughty, &c., to hold the same in trust in equal proportions, for Gertrude Eliza, the wife of Richard R. Ward, and Gertrude Ray Ward, her daughter, the interest of the said amount to be paid by him to the said Gertrude Eliza Ward and Gertrude Ray Ward, in equal proportions, *from and after the time of the decease of my wife Elizabeth.*"

2. " Item, it is my will that the bond which I hold from the trustees of the Methodist Society, &c., remain uncollected for *three years after the time of the decease of my wife Elizabeth,* when the said amount shall be collected and divided, and I do give and bequeath the same as follows, viz. : one thousand dollars thereof to the Methodist Society aforesaid, one thousand dollars thereof to the Rev. William S. Stillwell, &c., &c., &c., and it is my will that the income thereof, shall, *from and after the time of the decease of my wife Elizabeth,* be divided in like proportions among the said legatees, and paid to them half-yearly."

3. "Item, I give and bequeath to Richard E., the son of the Rev. William M. Stillwell, the sum of one thousand dollars, to be paid to him *at the time of the decease of my wife Elizabeth,* out of the money secured to be paid to me by the bonds of Samuel S. Doughty ; and I do give and bequeath to the said Samuel S. Doughty, all the residue of the amount secured to be paid to me by the said bonds ; and it is my will, that on the payment to the said Richard

E. Stillwell, of the sum of one thousand dollars, as aforesaid, all the said bonds shall be cancelled."

The question raised on these clauses of the codicil, relates to the disposition of the interest on the several legacies, which may accrue previous to the decease of the testator's wife, the widow claiming that out of the words " *at*" or " *after the decease of my wife Elizabeth*," arises a life estate, by way of implication, in her favor.

In regard to real estate, a devise to the testator's heir after the death of A., confers on A. an estate for life by implication, but a devise to B., a *stranger*, after the death of A., does not confer an estate on A. by implication. The reason is, that in the first case the testator cannot be supposed to give an estate to his heir after a certain time, and yet mean the heir to have it in the mean time ; in the latter case, though the devisee is not to take the estate until the decease of A., yet it is possible the testator meant his heir to have it during the life of A., during which period he left it undisposed of. (1 *Jarman*, 466.)

The same principles seem applicable to bequests of personal estate. (1 *Jarman*, 478.) It is true there are decisions apparently conflicting on this point, but I think they can be reconciled as all falling within the doctrine, that a bequest to one of the next of kin, who in case of intestacy would be entitled to a share of the thing bequeathed, after the death of A., gives a life-estate to A. by implication, upon the ground above stated in regard to real estate. In *Bendale* vs. *Summerset*, 5 *Burr.*, 2608, the legacy was to one daughter on the death of another In *Bird* vs. *Hunsdon*, 2 *Swan.*, 342, it was on the death of M., to " brothers' and sisters' children," and there was a previous bequest to M., so long as she continued single ; in *Blackwell* vs. *Bull*, 1 *Keen*, 176, it was to the testator's children on the decease of his wife; in *Cockshott* vs. *Cockshott*, 2 *Coll. C. C.*, it was to the testator's sons and daughters after the death of his wife, " or so long as she continued" his widow ; but there is no case that I find where such an implication is raised

on a gift to a *stranger*, on the decease of another, it being quite possible the testator has so limited the time of possessing the gift on the decease of a third person, for the very purpose of leaving the intermediate benefit in the enjoyment of his legal representatives. (See *Studholme* vs. *Hodgson*, 3 *P. Wms.*, 299; *Frederick* vs. *Hall*, 1 *Vesey*, 396; *Upton* vs. *Lord Ferrers*, 5 *Vesey*, 801; *Cooper* vs. *Pitcher*, 4 *Hare*, 485; 4 *Kent's Com.*, 541; *Roper on Legacies*, 1497; *Brown* vs. *Clark*, 3 *Vesey*, 167; *Horton* vs. *Horton*, *Cro. Jac.*, 74; *White* vs. *Green*, 1 *Battle. Eq. Cas.*, 50.) In *Bland* vs. *Lamb*, 2 *Jac. & W.*, 408, the testator gave to L. on the demise of his wife, his silver bread-basket, and Lord Eldon said, " although no human being can doubt he meant her to have, and thought she would take it for life under these words, yet she would not be entitled to it, unless there is some subsequent clause which gives it to her, because as the person to whom it is given would not have taken his personal estate, there is no necessary, or at least, no legal inference, that she was to have it for life." (See *Preston on Legacies*, 142; *Swinborne*, 357, *note;* *Ward on Legacies, Law Lib., N. S., Vol.* 2., *p.* 11.) In the present case, the testator left a large residue undisposed of by his will, after providing for his wife and other special objects of his bounty. In limiting the time when these legatees should take, upon the decease of his wife, it sufficiently explains the limitation, to know that as his widow she would partake in the intermediate income. As he left her to take one half of the residue according to law, there is enough reason in making these special bequests vest in possession upon her decease, thereby giving her the benefit of one half of the reserved income. So far indeed from the language by which these legacies are given, raising a strong implication in favor of a life-estate for the widow, I think, on the contrary, it would be a violent presumption, in face of the fact that he had given her no life-estate in this large residue; and I think the language is as well satisfied on the supposition, that he intended the income

accruing on these particular legacies before his wife's decease, to go into the general residue, of which she was to have a statutory share, as by any other hypothesis. Upon the mere naked case of a gift to a stranger on the death of A., I should, from the state of the authorities, as well as from the reason of the thing, be disinclined to imply a life-estate in A., for it may well be that the testator designed the intermediate interest to go to his next of kin, and may have provided for one person on the death of another, from motives entirely foreign to the interest of the latter. Besides, in this instance, the testator has been careful to make provision for his widow, and has in addition to other devises and bequests, in precise terms expressly given her all the income of his real estate. Thus explicitly separating his realty from his personalty, and giving her the income of the former alone, is a strong expression of intention, which would exclude any conjectural or inferential construction in her favor as to the income of the personalty, unless it amounted to a necessary implication. Taking the fact that the gifts in question are to strangers, that he has in terms given the widow the income of the real estate only, and has left a large residue to be divided among his widow and next of kin under the Statute of Distributions, I cannot construe these particular bequests as giving the widow a life-estate therein.

In regard to the legacy to Richard E. Stillwell, the case is clear, without reference to the grounds I have discussed. That is a simple bequest to him of $1000, to be paid to him at the decease of the testator's wife. It is a vested legacy, payable at a future time. The clause shows, however, how unwise it would be to deduce from the event upon which the testator has made the legacy payable, an inference that he designed the fund for her benefit before her decease, for he goes on to direct out of what fund the legacy shall be paid, namely, the bonds of Samuel S. Doughty; and then, in the next breath, gives to Samuel S. Doughty all the residue of the amount secured to be

40

paid by the bonds, which of course includes principal and interest.

The decree must provide, then, for the income of the two legacies first mentioned to be distributed to the widow and next of kin, during the life of the widow, and for the payment to the parties in interest after her death, as specified in the will.