NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—February, 1884.

ABERNETHY V. CATLIN.

*In the matter of the estate of* JOHN J. ABERNETHY, *deceased.*

Decedent, by his will, gave to his executors " a certain bond and mortgage for $7,000, the present amount of principal due, and which I hold against J.," in trust to pay the interest to one for life, upon whose decease "they shall convert said . . . . bond and mortgage into money and divide and distribute the net proceeds." The principal had originally been $10,000, the unpaid balance being due at the time of execution of the will. Thereafter that balance was paid in two installments to decedent, who deposited the money at his banker's where it remained.—

*Held,* that the legacy was not demonstrative but specific, and adeemed.

Authorities upon the question of the ademption of bequests of instruments for the payment of money, and other bequests of a like character—collated.

Doughty v. Stillwell, 1 *Bradf.*, 300—distinguished.

HEARING of exception taken by Henry C. Abernethy to report of referee to whom was referred the account of Julius Catlin, Jr., and another, executor and executrix of decedent's will. The facts appear sufficiently in the opinion.

ELIAL F. HALL, *for executor and executrix.*

JOSEPH LAROCQUE, *for special guardian of infant legatee.*

PAYSON MERRILL, *for H. C. Abernethy and another.*

THOS. J. TILNEY, *for I. Pangborn.*

THE SURROGATE.—The final account of this decedent's executors, together with the objections thereto, were in October, 1881, submitted to a referee, whose report is now before the Surrogate. To that report a single exception has been filed. It relates to an issue arising upon the following state of facts:

The testator, by the fifth clause of his will, provided, among other things, as follows: "I give to my executors . . . a certain bond and mortgage for $7,000, the present amount of principal due, and which I hold against John H. Atwater . . . in trust to . . . . pay over and apply . . . the interest . . . to the sole use and benefit of my cousin, the Rev. Henry C. Abernethy, during his life. Upon his decease, they shall convert said . . . bond and mortgage into money, and divide and distribute the net proceeds equally among his children."

This will was executed in February, 1879. The mortgage to which it refers had fallen due in April, 1878. Originally it had been for the sum of $10,000, but $3,000 had been paid on account of it in December, 1878.

In May, 1879, three months after the execution of the will, the mortgage was still further reduced by the payment of $2,000 to the testator, and in July of the same year he received the balance. In the following October he died. The referee has found, upon these facts, that the discharge of the mortgage in the lifetime of the testator operated as a complete ademption of the legacy.

In determining whether or not this finding is correct, it should be first considered whether the legacy in dispute is general or specific. For it is a well known doctrine that one to whom a specific legacy is given can ordinarily take nothing thereby, unless the legacy remains *in specie* at the death of the testator. To this rule there are certain exceptions which will be referred to hereafter. But, save for such exceptions, a specific legacy is of no avail to the person named as legatee, if in the lifetime of the testator it has been destroyed, consumed, sold, exchanged or in any manner disposed of, so that nothing remains in the estate to which the dispositive words of the will can be deemed applicable.

Now, in the present case, did the testator, when he executed his will, *intend*, in the legal sense of that word, to give his executors, as trustees, merely the bond and mortgage, for paying over to this exceptant during his life such interest, if any, as might be collected thereon from time to time; or did he, on the other hand, intend, by his reference to such bond and mortgage, to stamp the legacy as belonging to the class called demonstrative, and to indicate the source to which resort should be primarily but not exclusively had for its payment?

In the oft cited case of Ashburner v. Macguire (*2 Bro. C. C., 108;* 1786) a construction was put upon these words of a will: "I bequeath to my sister Jane the interest arising from her husband's bond to me for 3,500 pounds sterling during her life. I bequeath the principal of the said bond, on the decease of my sister Jane, to her four daughters." In the lifetime of the testator, the husband of the beneficiary became insol-

vent. The testator proved his debt in bankruptcy, and received a dividend amounting to four shillings in the pound. Upon this state of facts it was held, first, that the legacy was specific; secondly, that it was adeemed to the extent of the dividend received by the testator.

This doctrine was reasserted, under somewhat similar circumstances, in Pitt v. Camelford (*3 Bro. C. C., 160;* 1789), and in Stanley v. Potter (*2 Cox, 180;* 1789), where it was held that a bequest of a debt was adeemed by its payment to the testator in his lifetime. So, too, in Badrick v. Stevens (*3 Bro. C. C., 431;* 1792), it was determined that a gift to A. of 30 pounds "to be paid out of 200 pounds due from John Cooper to me on bond" was a specific legacy, which was extinguished by the satisfaction of such bond in the testator's lifetime. In Innes v. Johnson (*4 Ves., 568;* 1799), the testator gave his sister the "interest of 300 pounds upon bond" for the term of her natural life, and to her daughter after her own decease he gave "the interest that shall be fairly and justly due upon said bond, together with the principal." At the time of the making of the will and at the time of his death, the testator had a certain bond for £300, which was identified as the bond referred to in the will. The obligee was insolvent at the time of the testator's death, and in behalf of the legatee it was urged that the bequest was demonstrative, and that she might look to the general estate for satisfying it. This view was not sustained by the court.

"I give," said a will which was the subject of consideration in Fryer v. Morris (*9 Ves., 360;* 1804), "unto P. such sum of money as my executors may receive on the

interest note of 400 pounds given to me by Messrs. Cross & Company, bankrupts, either as dividend under their commission, or which my executors may receive from the representatives of the late James Cross, deceased, or otherwise in respect of such note, in trust," etc. Before the testatrix died, the amount remaining due on the note was paid to her. Held, that the legacy was specific and was lost by such payment.

In Barker v. Rayner (*5 Madd., 208;* 1820), a testator had effected two policies of insurance on the life of his wife, payable to himself, his executors, etc. He assigned these policies to one Rayner as security for a debt he owed him. While the testator was yet living his wife died. He thereupon received the amount of the policies, paid thereout his debt to Rayner, and invested the balance in securities which he held at his death. He had previously, and while his wife was yet alive, executed a will, whereby he gave to his executors all his right, title and interest in the two policies of insurance above referred to, upon trust to pay the annual premiums during the natural life of his wife, and to pay also certain annuities to persons named; and on the further trust, upon the decease of his wife, to receive the principal sums, and, after reimbursing themselves for amounts expended for premiums and annuities, to make a certain specified application of the remaining proceeds. Held, that the payment of the policies to the testator was the death of the legacy. This decision was subsequently confirmed on appeal (*2 Russ., 122;* 1826).

Gardner v Hatton (*6 Sim., 93;* 1833) upholds the

same doctrine, and that case closely resembles the one at bar.

There a testator had bequeathed 7,000 pounds secured on a certain mortgage. After the execution of the will his solicitor, on his behalf, had received the whole of the principal of such mortgage and the arrears of interest. Immediately afterward, 6,000 pounds had been invested by the solicitor in another mortgage, on which security it thereafter continued until the testator died. It was claimed that this legacy was demonstrative; that it substantially bequeathed a sum then out on mortgage, and that, even if it should be deemed specific, the manner in which the testator had disposed of its proceeds showed an intention to preserve it for the legatee. It was, however, held by the Vice Chancellor that the legacy was extinguished.

In Davies v. Morgan (*1 Beav.*, *405 ;* 1839), it was held that a gift of " the sum of one hundred pounds owing to me by bond from my father" was a specific and not a demonstrative legacy.

By a will construed by the Supreme court of Ohio in the case of Gilbreath v. Alban (*10 Ohio*, *64 ;* 1840), the testator gave to his wife " all the amount of moneys and interest that may be recovered of and from Dr. Kirker for the sums due me for the purchase of the Penrose estate." Dr. Kirker paid his indebtedness to the testator in his lifetime. Held, that the legacy was not demonstrative, but specific, and that it was adeemed by the payment of the debt.

In Gardner. v. Printup (*2 Barb.*, *83 ;* 1847), the Supreme court of this State had under consideration a case closely resembling the present. A testator be-

queathed "*the proceeds of a bond and mortgage*" which he described. In his lifetime he commenced proceedings for the collection of the amount due on the bond. This led to a sale of the mortgaged premises. The testator was paid a certain sum in cash, and took from the purchaser a bond which he indorsed as payment on the original mortgage. It was held that, under these circumstances, the legacy was extinguished.

The question of ademption came again before the Supreme court in the case of Beck v. McGillis (*9 Barb.*, *56 ; 1850*). A testator had executed a will bequeathing a certain mortgage which he had afterwards foreclosed. He had taken from the purchaser a new mortgage upon the same premises. It was held that the foreclosure had destroyed the legacy, and that too in spite of the fact that, after the decease of the testator, there was found among his papers a memorandum in his own handwriting declaring that he intended the new mortgage to take the place of the old, and to pass under his will as the other would have done if it had remained unextinguished at his death.

In view of these decisions, and of many others to the same effect, which I have discovered while vainly seeking for authorities in opposition, I am forced to conclude that the legacy here under consideration was annihilated when the testator was paid the $5,000.

It is urged that, as he did not demand or desire the discharge of the mortgage, but reluctantly consented because he was powerless to refuse, I may properly find that it was not his intention that the legacy should adeem: In the earlier decisions of the English courts, a distinction (such as seems to have obtained, also, in

the civil law) was drawn between cases in which the discharge of a debt or security bequeathed was brought about in the testator's lifetime by his own procurement, and other cases where it was effected at the instance of the debtor himself. This distinction, however, is no longer recognized (Stanley v. Potter, *2 Cox, 180;* Pulsford v. Hunter, *3 Bro. C. C., 415;* Fryer v. Morris, *supra;* Le Grice v. Finch, *3 Meriv., 51;* Beck v. McGillis, *supra*).

The moneys received upon the discharge of the mortgage here in question were deposited by the testator with Catlin & Co., where it seems they were thereafter continuously kept. It is claimed that this fact justifies the conclusion that he did not intend that the legacy should be extinguished, but simply changed its form, as he was obliged to do upon the debtor's demand. To the rules of interpretation which ordinarily obtain in respect to specific legacies, I have already said that there are certain exceptions. One of these is where, by operation of law, the testator's interest in the thing bequeathed is somehow changed. Such, for example, was the case in Walton v. Walton (*7 Johns. Ch., 258;* 1823). It was there held that a legacy of 30 shares in the Bank of the United States of America, though specific in its nature, was effective at the testator's death, notwithstanding the fact that, prior to that date and after the execution of the will, the charter of the bank had expired and its funds had been conveyed to trustees.

The same doctrine was maintained in Partridge v. Partridge (*Cases temp. Talbot, 226;* 1736), the court there holding that where, by legislative enactment,

certain stock bequeathed by a testator had, before his death, been converted into annuities, such conversion did not work an ademption of the legacy. So, too, in Basan v. Brandon (*8 Sim.*, *171;* 1836), it was determined that an alteration of the securities of a fund specifically bequeathed did not defeat the legacy, in a case where such alteration was made by an agent of the testator without his personal direction or assent.

It was held by the Court of Appeals, in Giddings v. Seward (*16 N. Y.*, *365;* 1857), that a legacy bequeathing "the sum of $1,200 and interest on the same, contained in a bond and mortgage given to me by O. W. S." was not adeemed by the satisfaction of such bond, and mortgage in the testator's lifetime. "The language is," says the Judge who pronounces the opinion of the court, "I give and bequeath—*not a certain bond and mortgage, but the sum of $1,200, and interest on the same, contained in a bond and mortgage.*" To the same effect is Le Grice v. Finch (*supra*).

Counsel for this contestant seems especially to rely upon the decision in Doughty v. Stillwell (*1 Bradf.*, *300*). There the testator directed that a certain bond of the trustees of the Methodist Society of New York, held by him as security for the payment of $6,000, with interest at the rate of six per cent. per annum, should remain uncollected for three years after the decease of his wife, when *said amount should be collected and divided.* "And I do give and bequeath *the same*," said the will, "as follows," etc.

The obligors subsequently sold their church and property to the Emanuel Congregation, taking as part of the consideration its bond and mortgage for $6,000.

These securities were then assigned to the testator, who thereupon surrendered the bond and mortgage of the Methodist Society. At the death of the testator, the obligation of the Emanuel Congregation remained uncollected among his assets.

Surrogate BRADFORD expressed a doubt whether the legacy there in dispute should necessarily be pronounced specific, and cited several authorities in support of the theory that it was demonstrative, though he admitted that decisions to the contrary were by no means wanting. In holding, however, as he did, that the legacy was not adeemed, he based his conclusion chiefly upon the fact that, in exchanging the bequeathed bond and mortgage for another bond and mortgage of the same amount and on the same property, the testator had done nothing which worked an ademption. "The principle seems to be," he says, "that, if the fund, instead of being destroyed, remain the same in substance with unimportant alterations, such slight variations will not adeem the bequest." . . . *The money is not paid;* only a new security is taken, in its nature growing out of the former.

I confess my regret that the facts in the present case do not fairly bring it within the doctrine of any of the exceptions above cited. The mortgage here bequeathed was overdue at the time testator made his will, and his attention was sharply called to the fact that, at any moment, the mortgagor might insist upon a discharge of his obligation by its payment. If, when that discharge was in fact effected, the testator had wished to avoid the predicament in which it placed the legacy to his cousin, it was incumbent on him to amend the tes-

tamentary provision that had been made in his behalf. He had given to his executors, as trustees, nothing but the bond and mortgage. In place of those securities no others of a similar character had been substituted. It is manifest that the mere deposit of moneys with his bankers was not such a setting apart for the legatee as, even upon the very liberal principle of the civil law, would have served to prevent ademption.

The report of the referee must therefore be confirmed, and an order may be entered accordingly.