JAMES ADAMS and others, *vs.* ROBERT M. WINNE and others.

Where W. by his will devised to his two sons certain portions of his real estate, and charged them with the payment of his debts, and also devised certain other portions of his real estate to his two daughters, and then gave all the rest of his property to his four children to be equally divided between them, and after the making of his will, he sold and conveyed one of the lots devised to his daughters, for $3000, and received on the sale one sixth of the purchase money and a bond and a mortgage on the lot sold for the residue, and W. the testator died leaving the bond and mortgage uncollected; *Held*, that the sale of the lot and taking back the bond and mortgage for the purchase money was a revocation of the devise of the lot to the two daughters, and that the bond and mortgage passed to the four children under the residuary clause in the will.

The provisions of the revised statutes relative to implied revocations of wills of real estate, do not extend to the case of an actual conversion into personal property of the real estate devised, subsequent to the making of the will, by selling and conveying the testator's whole interest in the land and taking back a bond and mortgage for the purchase money, or a part thereof.

THE bill in this cause was filed by the two daughters of Moses Winne deceased, together with their husbands, claiming the whole beneficial interest in a bond and mortgage given to the decedent in his lifetime, and asking for an injunction to restrain the collection thereof for the benefit of his residuary legatees, under the following circumstances: In October 1834, the testator made his will in due form, and thereby devised to his two sons certain portions of his real estate, and charged them with the payment of his debts; and certain other portions of his real estate he devised to his two daughters the complainants. After making a provision for his wife who afterwards died before the testator, he devised and bequeathed all the rest of his property real and personal of which he should die seized or possessed, to his four children, to be equally divided between them. In March 1836, after the death of his wife, the testator sold and conveyed to the defendant Dagget one of the lots so devised to the two daughters, for the consideration or price of $3000. Of this sum the purchaser paid down one sixth,

and gave his bond and mortgage to the testator upon the same premises for the residue, $2,500 ; of which sum $1000 was to be paid on the first of May then next, and the residue on the first of August thereafter, with interest after the first of May.  The testator died in June 1836, leaving the whole amount of the bond and mortgage uncollected.  After the death of the testator, the complainants claiming the whole benefit of the bond and mortgage, under the devise of the lot for the purchase money of which the bond and mortgage had been afterwards taken, gave notice to the mortgagor not to pay this debt to the executors; upon which he declined paying the same.  But the executors being advised by counsel that the bond and mortgage were personal estate, and as such belonged to the residuary legatees of the testator, commenced a suit at law upon the bond, to recover the amount thereof, for the purpose of disposing of the money in that way when collected.  Upon which the bill in this cause was filed, and the complainants applied for an injunction to restrain such proceeding at law.

*H. Z. Hayner*, for the complainants.

*A. Taber*, for Dagget, the mortgagor.

*S. Stevens*, for the other defendants.

THE CHANCELLOR.  In the decision of this case I lay entirely out of question what is stated in the answers of the two sons of the testator, as to the distribution of the money received upon the sale of this lot equally by the testator between the sons and daughters ; also what is therein stated as to the donation to the daughters, before the sale of this lot, of the personal property bequeathed as a specific legacy to their mother.  As to the debt due to C. Vanderheyden, and the testator's supposed intention to have that debt paid out of the money secured by this bond and mortgage, that two sons do not claim that there was such a specific appropriation of this fund for the purpose, by the testator in his lifetime, as to exempt them from the payment of that debt, which is charged upon them as devisees of a part of

the real estate. And if they did, such a claim could not be sustained.

If the conversion of real estate into personal property, by an actual conveyance of the same and the taking back a bond and mortgage for the purchase money, is not of itself a presumptive revocation of a devise of such real estate, the devisees cannot be deprived of their right to the same, under the will, by the introduction of parol evidence of an intention of the testator to revoke. But under the provisions of the revised statutes, evidence is admissible to show the situation of the testator's property at the time of making his will, and the changes which took place therein afterwards, for the purpose of enabling the court to determine, as a question of law, whether a devise of real estate was revoked, or a specific legacy was adeemed, either wholly or in part, by a partial or total destruction or change of the subject matter of the devise or bequest. Parol evidence of an actual intent to revoke a devise or bequest, which revocation could not be implied by the court from a mere knowledge of the different situations of the testator's family and property at the time of making his will and afterwards, is however wholly inadmissible. In other words, extrinsic evidence must be admitted to prove the *material facts* upon which the legal question of revocation depends. But if the court, after being placed in the situation of the testator by a knowledge of all those material facts, is not authorized as a question of legal construction to declare that the devise or bequest was revoked or adeemed, other evidence to show the actual intention of the testator cannot be received. On the other hand I believe the revised statutes have settled the principle, which before had been left in doubt by the conflicting decisions of courts, that where the law presumes a revocation from a change in the testator's family or property after the making of his will, parol evidence of actual intention to the contrary is not admissible to rebut that presumption. (*See* 2 *R. S.* 64, § 43, *and Revisers' note.*)

The only question in this case therefore is a mere question of law, as to the effect of a subsequent sale of real estate and the taking back a bond and mortgage for the pur-

1838.

Adams
v.
Winne.

chase money, upon the rights of those to whom the estate was devised by a will previously made. On the part of the executors and of the two sons who are interested as residuary legatees, it is insisted that by the sale and conveyance, after the making of the will, the devise of this lot was absolutely revoked, and that the proceeds of the bond and mortgage must be distributed as a part of the testator's residuary estate. The complainants on the contrary contend, that by the taking back of the mortgage on the same premises for a part of the purchase money, simultaneously with the execution of the conveyance to the purchaser, the testator's estate or interest in the property previously devised was merely altered, but not wholly divested; that under the 47th section of the article of the revised statutes, which contains certain general provisions applicable to wills of real and personal property, (2 *R. S.* 65,) the devise to the two daughters of this particular lot was only revoked as to that part of the purchase money which was received by the testator in his lifetime; and that they are therefore entitled to the amount which remained due upon the bond and mortgage at his death.

Previous to the revised statutes, a devise of real estate, whether general or specific, was in the nature of an appointment of the specific estate which the testator had at the time of making his will; but to take effect only at his death, and giving to the testator the absolute control over the same in the meantime. It was therefore, like a bequest of a specific legacy of personal estate, liable to be revoked or adeemed by a total destruction or an entire change of the estate or property which was the subject matter of the bequest or devise. It necessarily followed from the adoption of this principle, that when the testator entirely changed the nature of the property devised, or parted with all his interest in the same subsequently to the making of his will, there was an implied revocation of the devise; even though he might afterwards have acquired a similar interest in the same property by a new purchase thereof, or otherwise. But where the subsequent disposition was of a partial interest in the subject matter of the devise merely, but leaving the

residue of the estate devised still in himself, it was only a partial revocation or ademption, to the extent to which the estate was disposed of or changed, and the devise remained good as to the residue. And as there was a marked difference between real and personal estate in many respects, it also followed from the principle before mentioned, that when the testator had converted real estate, which he had devised as such, into personalty, or had converted the subject of a specific bequest of personal property into real estate, there was a revocation of the will or an ademption of the bequest so far as the nature of the property was changed. To this extent I apprehend the legislature intended to leave the law unchanged by the section of the revised statutes above referred to; except in the case of a mere equitable conversion of the subject of the devise, by a covenant or contract to sell the same, which case is provided for by the 45th section. (2 *R. S.* 64.)

There was another class of cases, however, in which the courts of England, by departing from the true principle of implying the revocation of a devise only in case of an actual instead of a mere constructive ademption of the subject matter of the testator's bounty, and by the adoption of arbitrary rules not founded upon any correct principles of construction, had almost uniformly defeated the actual intentions of the testator. Some of these cases were referred to by Chief Justice Eyre, in the very able and satisfactory opinion delivered by him in the case of *Cave* v. *Halford*, (3 *Ves. Jun.* 662.) Although he differed with his associates as to the application of one of those arbitrary rules to a part of the case then under consideration, he was nevertheless constrained to admit that some of those rules, which evidently defeated the probable intent of the testator, had become settled rules of property which the legislative power alone had a right to change. The result of a departure from the true principle upon which the implied revocation by ademption was originally based, and of an adherence to these arbitrary rules and subtle refinements, in defeating the intention of the testator by a constructive revocation of his will, is very clearly and forcibly pointed out by the re-

visers, in their note to the 47th, 48th and 49th sections of the revised statutes as finally adopted. I have no doubt therefore that this class of cases alone was intended to be reached by the adoption of the two first of these sections; the 49th being only applicable to an unsettled question of implied revocation of an entirely different character.

Before the passing of the revised statutes it was well settled that an actual conversion of real property into personalty, as by the sale of land and taking a bond and mortgage thereon for the purchase money, was such an ademption or destruction of the specific property devised as to revoke a previous will of such property as real estate. And even an equitable conversion of the real estate devised, by the making of a valid agreement to sell the same but without parting with the legal title, was deemed a revocation in equity. Both of these cases came within the general principle upon which the implied revocation of a devise, by ademption of the subject matter thereof, was originally based. And as the legislature has altered the law as to the last only, I feel bound to declare that the will of the testator was absolutely revoked as to the lot sold by him, and upon which this bond and mortgage were taken, for a part of the purchase money agreed to be paid upon the sale of such lot. The bond and mortgage are therefore a part of the testator's residuary personal estate; and the proceeds thereof, when collected, must be distributed as such by the executors.

The application on the part of the complainants for an injunction must be dismissed with costs.