Clinton Special Term, October, 1850.   *Hand*, Justice.

## Gilbert *vs.* Gilbert and others.

9b   532
170 NY 391

G. being seised in fee of a lot of land, made his will, devising the same to the plaintiff, his wife. Subsequently, and before his death, he disposed of the lot to H., receiving, as a part of the consideration, other lands. The plaintiff joined in the conveyance of the lot to H., she as well as the testator, being assured by the person who drew the deeds, and believing, that the exchange of farms would not alter the will, or affect the devise to the plaintiff, except to give her the land received in exchange, in lieu of the lot devised to her. The testator afterwards died, without having altered his will; leaving no real estate, except the lands received by him from H. in exchange for the lot conveyed to the latter. On a bill in equity, filed by the plaintiff against the heirs at law of the testator, praying that she might

Gilbert *v.* Gilbert.

be declared entitled under the will, to all the land of which the testator died seised; *Held*, that the court had no power to correct the mistake of the testator as to the effect of the conveyance of the lot to H., it being a mistake of law; and the bill was dismissed.

In Equity. The bill in this cause was filed in 1845. Dwight Gilbert married Laura Gilbert, the plaintiff, in 1815. On the 24th of September, 1836, Dwight was seised in fee of lot No. 31, Dean's patent, containing 200 acres. At that time he made his will, and gave a few legacies; to his brother James, all his wearing apparel; and said lot No 31 and his household furniture, &c. and all his other personal property, including certain notes, cash, &c. to the plaintiff. The will was published on the 24th of September, 1836. On the 17th of April, 1837, he disposed of lot No. 31, to Lucius Heaton. Heaton was to take D. Gilbert's farm at $2040, and of that amount, by an arrangement between the parties, to pay one Hubbell $300, one Denton $820, and one White $920. White conveyed to D. Gilbert 101 acres, for the consideration of $1290; Denton, 37½ acres, for $820, and D. Gilbert received only $12 in money, over and above paying for these two parcels. A witness testified that the testator assured the plaintiff that this transfer and purchase would make no difference, and he would make another will if necessary, and also proposed to have it conveyed directly to her; that he intended to will her all his real estate. And the person who drew the deeds, who was not a lawyer, assured both D. Gilbert and the plaintiff, who applied to him for advice, that this was a mere exchange of farms, and would not alter the will or affect her rights under it. The plaintiff alledged that upon these assurances, D. Gilbert conveyed lot No. 31 to Heaton, and she released her right of dower therein. D. Gilbert died in 1842, without children, and without altering his will. He had no real estate at the time of his death, except the lands conveyed to him by White and Denton, of which he left the plaintiff in possession; he having taken possession on the 17th of April, 1837. The bill was filed against the heirs at law of the testator, and prayed that the plaintiff might be declared entitled, under the will, to

all the land of which D. Gilbert died seised. The bill was taken as confessed, as against all the defendants except J. Gilbert.

*J. D. Woodward*, for the complainant.

*G. M. Beckwith*, for the defendant, J. Gilbert.

HAND, J. The proofs in the case show that Dwight Gilbert, the testator, and his wife, the complainant, both supposed that the change of property would not affect the devise to her, except to give her the land deeded to him by White and Denton, in lieu of lot No. 31, specifically devised to her by the terms of the will. The person who drew the deeds, gave them this advice ; and upon this exposition of the law, it is very clear the testator relied. He was so determined that his wife should have the land, that he proposed to have it conveyed directly to her. And that, probably, would have been done, had it been deemed necessary.

Under all these circumstances, the question is, whether the court can correct this mistake of the testator, as to the effect of the conveyance of lot No. 31. I have had occasion very recently, in the case of *Arthur* v. *Arthur*, to examine this subject, and found no power authorizing courts to rectify such mistakes. There are many cases to be found in the books, in which it has been held, that a devise had been revoked, contrary to the actual intention of the testator. This can not, under the provisions of our revised statutes, take place so often as formerly. But in this case, there can be no doubt but that the devise of lot No. 31, was, and was intended to be, revoked. The mistake was in supposing that the devise shifted over upon, and carried the newly acquired lands. That being purely a mistake of law, can not now be corrected. The statute of frauds, formerly, and now our statute in relation to wills, will not permit this to be done. (2 *R. S.* 63, §§ 40, 41, 42, 45, 46, 47, 48. *Adams* v. *Winne*, 7 *Paige*, 99. 1 *Story's Eq. Jur.* § 179.) And this rule stands upon principle as well as upon statute. (*Hunt* v. *Rousmanier's adm'rs*, 1 *Peters' R.* 1. *Hall* v. *Reed*, 2 *Barb. Ch. R.* 500.

The People *v.* The Mayor, &c. of Brooklyn.

*Lyon* v. *Richmond,* 2 *John. Ch. R.* 60.   *Webb* v. *Rice,* 6 *Hill,* 209.)  Indeed, parol evidence of such intent is inadmissible. (*Adams* v. *Winne, supra.*  2 *Story's Eq. Jur.* § 1531.  1 *Phil. Ev.* 548.  *Irving* v. *DeKay,* 9 *Paige,* 528.  *Martin* v. *Drinkwater,* 2 *Beav.* 215.  *Jackson* v. *Sill,* 11 *John. R.* 201.)  If the case of *Lansdown* v. *Lansdown,* (*Mosely,* 364,) can be sustained at all, and it has often been doubted, it can not be on the ground of a mistake of the law; for modern decisions have settled that point.  (1 *Story's Eq. Jur.* § 125, *and notes.*)  Had the parties, benefited by this misapprehension, occasioned it by preventing the testator from altering his will, and under circumstances amounting in equity to a fraud, the case would have been different; but nothing of that kind is shown or pretended.

The bill must be dismissed, with costs.

---

Kings General Term, October, 1850.   *Morse, Barculo, and Brown,* Justices.