## VANDEMARK vs. VANDEMARK.

A devisee or legatee may appeal from an order of the surrogate, admitting a will to probate, notwithstanding he was one of the persons who presented the will to the surrogate, and petitioned for its probate.

The sale and conveyance, by a testator, subsequent to the execution of his will, of the principal part of a farm devised therein, will operate as a revocation, not of the whole will, but only of the devise, to the extent that the testator has divested himself of the property devised.

The proceeds of the land thus sold, if in the hands of the testator at the time of his death, will pass, with the residue of his personal estate, to the persons to whom that estate was bequeathed.

THIS was an appeal from an order of the surrogate of Ulster county, admitting to probate the last will and testament of William Vandemark, deceased. The will bears date the eleventh day of June, 1851, and was executed in due form of law. By the will, the testator devised to his son, James Vandemark, the appellant, a part of a farm called the Embree place, worth, as appears from the testimony in the case, about $2000, and charged it with the payment of $100 each to his two daughters, Maria and Rebecca. Some two years after the will was executed, the testator sold and conveyed the whole of the premises thus devised, with the exception of about 12 or 15 acres, worth about fifteen or twenty dollars per acre.

The testator also devised to his son, Charles C. Vandemark, the respondent, his homestead farm, worth, it appears, from $2500 to $3000, and charged it with the payment of $100 to his daughter Cornelia. He also devised to another son, John W. Vandemark, another farm in Marbletown, worth about $2500, and a small piece of land besides, containing about twelve acres. He charged this devise with the payment of $100 to his son, Martin Vandemark. He devised to his three daughters, Maria, Rebecca and Cornelia, a wood lot in Marbletown Commons. This lot he subsequently sold and conveyed for $300. Another piece of land, called the Chambers lot, he divided into three equal parts, and devised one part to

Vandemark *v.* Vandemark.

each of his sons, Charles, John and Martin. The part devised to Charles was subsequently sold and conveyed by the testator. . The testator gave his personal property to his sons, Charles and John, to be equally divided between them.

The testator also purchased, on the 12th of January, 1852, a lot containing 27 acres, for which he paid $810, and which he owned at the time of his death. He died on the 3d day of November, 1855, leaving a widow and six children surviving, and also a grandson, the son of his deceased daughter Maria. The will was presented for probate by his sons, James Vandemark and Charles C. Vandemark, the executors named therein. Rebecca, the wife of Daniel Wager, Cornelia, the wife of William H. Keator, and Martin Vandemark, opposed the probate of the will, chiefly on the ground of *revocation.* The surrogate, after hearing the proofs and allegations of the parties, made an order, on the 5th of February, 1856, admitting the will to probate. From this order, James Vandemark appealed to this court.

*E. Cooke,* for the appellant.

*J. K. Porter,* for the respondent.

*By the Court,* HARRIS, J. The appellant, James Vandemark, presented the will to the surrogate, and was a petitioner for its probate. It is insisted that he cannot appeal from the order made upon his own application. But this objection is untenable. The statute provides that, after any will has been proved before the surrogate, any devisee or legatee named therein, or any heir or next of kin to the testator, may, within three months thereafter, appeal from the decision. (2 *R. S.* 66, § 55.) This provision is, of course, sufficier ?y broad to authorize this appeal, even though the int was a petitioner for probate.

.?eble attempt was made, upon the hearing before the te, to show the incapacity of the testator, but the

. XXVI.          53

ground upon which the appellant relies to reverse the decision of the surrogate is, the changes which were made in the property of the testator between the time of making the will and his death. It is undoubtedly true, that by the sale of the Embree farm, which had been devised to the appellant, he has been nearly disinherited. The interests of other parties have been affected, some for the better and some for the worse, but none so seriously as those of the appellant. The daughters of the testator are deprived, for the most part, of what he intended, when he made his will, they should receive. But they are partially, perhaps fully, compensated, by being made heirs, with their brothers, of the piece of land purchased after the will was executed. The principal hardship falls upon the appellant. The most of the land devised to him was sold, and the proceeds, being personal property, have probably gone to increase the amount to be received by his brothers, Charles and John, to whom the personal estate was bequeathed.

But, however willing we might be to see the will annulled, and what might seem to us a more equitable distribution of the property take place, it is not the province of this court to interfere. The will was executed in due form of law, and by a competent testator. I am not aware that a mere alteration of the estate has ever been allowed to work a revocation of the whole will. The doctrine of implied revocation had, indeed, been carried so far, in respect to specific devises, that the legislature, in the revision of our statutes in 1830, thought fit to interpose, and to define the cases in which it should be allowed to operate. (2 *R. S.* 64, §§ 46 *to* 48.) Now, a change in the property of the testator, subsequent to the execution of his will, operates as a revocation of the devises in the will, just so far as the alteration in the property has had the effect to place it beyond the operation of the provisions of the will, and no further. In *Adams* v. *Winne*, (7 *Paige*, 97,) a testator had devised certain portions of his real estate to his two sons, and certain other portions to his two daughters. Sub-

sequently, he sold a part of the real estate devised to his daughters, and received for a part of the consideration, a bond secured by a mortgage upon the same premises. It was held that the sale and conveyance of the lot operated, *pro tanto,* as a revocation of the devise. The will, itself, took effect, and the bond and mortgage, which had been substituted for the lot devised, passed to the children of the testator under a residuary provision. (*See also Beck* v. *McGillis, 9 Barb. 52.*) So, in this case, the sale and conveyance of the principal part of the farm devised to the appellant operated as a revocation, not of the whole will, but of the devise contained in the will, to the extent that the testator had divested himself of the property devised. The proceeds of the land thus sold, if in the hands of the testator at the time of his death, passed, with the residue of his personal estate, to those children to whom that estate had been bequeathed. There was nothing in these changes which could have the effect to revoke, or in any way invalidate the will itself. The order of the surrogate, therefore, was right, and should be affirmed with costs.

[ALBANY GENERAL TERM, May 4 1857. *W. B. Wright, Harris* and *Gould,* Justices.]