MALCOM G. McNAUGHTON and others, Appellants, *v.* JOHN McNAUGHTON, Executor of Isaac Getty, deceased, Respondent.

Where a lot is specifically devised, and afterwards sold by the testator to a third party, the sale operates, *quoad hoc,* as a revocation of the gift, and the devisee acquires no interest in a mortgage given to secure the whole or any portion of the purchase-money.

Otherwise, *it seems,* when the testamentary gift is of the *proceeds* of particular property, afterwards sold by the donor, if the avails are separable, in whole or in part, from the general bulk of the estate.

When the testator makes a devise, in general terms, of all his real estate, it is operative only in respect to such real estate as he has at the time of his death.

When two interests in the same subject matter are given to successive donees, the words, if they admit of it, should be so construed as to avoid incongruity, and to secure to each the interest intended by the testator.

APPEAL from a judgment of the Supreme Court, at the General Term in the fourth district, affirming the decision of the surrogate of the county of Washington, on the accounting of the respondent as executor.

The testator, Isaac Getty, was a resident of Salem, and died in February, 1856, being then about eighty years old. He left no children; and by his will, made fourteen years before, he had given absolutely to his wife all his personal property. He had also devised to her, for life, all his real estate; directing its sale after her decease, and the division of the avails, after payment of his debts, among his nephews and nieces.

When the will was executed, in January, 1842, he owned a farm in Salem, which he afterwards sold and conveyed to one Lytle, on the 7th of April, 1855, some ten months before his decease. The price was $3,894; and he received a mortgage for $2,800 of the purchase-money, payable ten years from date, with interest annually.

After the execution of the will, and before his death, he purchased a village lot, which was the only real estate he owned at the time of his decease.

The widow was named as an executrix, but never qualified. She died in July, 1858, a little more than two years after the death of the testator.

The respondent, as executor, then sold the village lot for $800, and was afterwards called by the nephews and nieces to an accounting before the surrogate. He accounted for the proceeds of the village lot, which was all that was shown to have come to his hands; but the legatees claimed that he was accountable also for the amount of the bond and mortgage given to the testator on the sale of the farm. They insisted, in substance, that the provision in their favor took effect as a bequest of money, and not as a devise of land; and that it was a gift of the avails of the specific real estate owned by the testator at the date of his will. They claimed that the sale by him of the farm was an execution by him of the power of sale given in the will, and that the bond and mortgage, being for a portion of the avails, passed under the bequest. The surrogate held, that the provision in their favor entitled them only to the avails of the real estate owned by the testator at his decease, and that the bond and mortgage passed to the widow, under the absolute bequest to her of all his personal property.

The language of the will was as follows:

"I, Isaac Getty, of the town of Salem, in the said county, do, by this my last will and testament, give and bequeath to my beloved wife, Jane Getty, all my personal estate, to be for her use and at her disposal. I give, devise and bequeath to my said wife all my real estate during her natural life. I will order and direct that at the decease of my said wife my real estate be sold, and after paying all my just debts and necessary expenses, the balance of the avails be divided in the following manner: One-third, in equal proportions, to James Getty, Ebenezer Getty, Agnes Getty and Euphremia Getty and Isaac Getty, children of my deceased brother Robert Getty; one-third part, in equal proportions, to Jane Getty, Elizabeth Getty, Sarah Beattie, John Getty, William Getty and Harriet Ann McClellan, children of my brother Ebenezer Getty; and one-third part, in equal proportions,

to Jane Hall, Maria Congdon and Malcolm McNaughton, children of my sister Sarah McNaughton. I do hereby appoint my wife, Jane Getty, executrix, and John McNaughton, executor, of this my last will and testament, hereby revoking all former or other wills by me made."

The decision of the General Term, affirming that of the surrogate, is reported in 41 Barb., 51; the opinion of the court being delivered by Mr. Justice Bockes.

*James S. Coon*, for the appellant.

*M. Fairchild*, for the respondent.

Porter, J.  When the will took effect by the death of the testator, the farm which he owned at its date had ceased to be a portion of his real estate. If there had been a specific devise to the appellants of the farm, the sale of it by the donor in his lifetime would have operated as a revocation of the gift. They would have acquired no interest in the bond and mortgage, though given for a portion of the purchase-money. The rule on this subject is well settled; and the reasons upon which it is founded are presented with admirable clearness and force in the opinion delivered by Judge Harris in the case of *Beck* v. *McGillis*. (*Vandemark* v. *Vandemark*, 26 Barb., 416; *Brown* v. *Brown*, 16 id., 569; *Beck* v. *McGillis*, 9 id., 35; *Adams* v. *Winne*, 7 Paige, 97; *Langdon* v. *Astor's Executors*, 16 N. Y., 39.)

There is no specific gift by the testator either of the farm or its proceeds. He gives his *real estate* to the widow for life, and its avails to the appellants after her decease. The provision in her favor is a strict devise, but the gift to the ultimate donees is in the nature of a pecuniary bequest. For the purpose of giving it effect, in accordance with the presumed intent, the real estate is equitably converted into personal property, from the death of the widow, when the sale was to be made and the avails divided among the nephews and nieces. (*Meakings* v. *Cromwell*, 1 Seld., 136; *Stagg* v. *Jackson*, 1 Comst., 206; *Craig* v. *Leslie*, 3 Wheat., 563;

*Smith* v. *Claxton,* 4 Madd., 492; *Bogert* v. *Hertell,* 4 Hill, 492.)

In determining the question whether the gift to the appellants of the avails of the real estate of the testator, related to what he held at the date of the will, or to that which he owned when it took effect by his death, we should consider the clauses disposing of this part of his property in their obvious relation to each other and to the subject matter of both.

In respect to the devise of his real estate to the widow for life, we are plainly bound to construe the will as referring to the lands, of which the devisor was seized at the time of his death. Before the revision of the statutes, the devise by a testator of all his real estate was deemed to be made in view of the state of his property at the date of the will, and it did not operate as a gift of lands subsequently acquired. Such a devise was specific in legal effect, though general in its terms. The Revised Statutes introduced a different rule, and made it the duty of the courts to construe a devise in these general terms, as applicable to the real estate owned by the testator at the time of his death. Until that event, the specific subject of the gift is undefined; and when it occurs, the devisee takes that, and only that, which would otherwise have descended to the heirs.

Under the operation of this rule, no question of revocation is raised by an intermediate sale of lands owned by the testator at the date of the will; for these, in contemplation of law, are not within the terms of the gift. (2 R. S., 57, § 5.) "This statutory provision," as Chancellor WALWORTH had occasion to say in the case of *Pond* v. *Bergh,* "proceeds upon the ground, that in a general devise of all his real estate, the testator has reference to the real estate as it shall exist at the time of his death; and that such a construction of the testamentary disposition of his property, will be but carrying his intention into effect." (10 Paige, 149.) A general devise of real estate has now, in this respect, the same effect with a general bequest of personal property; and the gift, in either case, embraces only such property as the donor

owns at the time of his decease, answering the descriptive terms of the will. (Willard on Executors, 58; *Brown* v. *Brown*, 16 Barb., 574; *Ellison* v. *Miller*, 11 id., 334; *Parker* v. *Bogardus*, 1 Seld., 311.).

The testator gave to his nephews and nieces the *avails* of the "real estate" devised for life to the widow. We are not at liberty to assume that he used the expression in a double sense. The statute requires us to apply it to such lands as he owned at the time of his death, in aid of the devise to her; and we have no authority for giving it a different application, in aid of the bequest of the proceeds to the nephews and nieces. The presumptive intent is in harmony with the language, and full effect is given to both, by referring the devise and bequest alike to the real estate of which he died seized.

It is claimed that the testator intended to bequeath specifically to the appellants the avails of the farm, and that in making the sale he was merely anticipating the execution of a power conferred by the will, in furtherance of the object of the gift. The bequest was of *the proceeds of his real estate*, and in that sense it was specific; but it was in no sense a specific bequest of *the proceeds of the farm* which he afterwards sold. If the latter had been its character, it may well be questioned whether the sale would have operated as an ademption of the gift. (*Coleman* v. *Coleman*, 2 Vesey, Jr., 639; *Ogle* v. *Cook*, id., 686; *Havens* v. *Havens*, 1 Sandf. Ch., 324; *Gardner* v. *Printup*, 2 Barb., 83; *Pierrepont* v. *Edwards*, 25 N. Y., 121.) But in this case no question of revocation or ademption arises, as the testator gave neither the farm nor its avails to the appellants.

The judgment should be affirmed.

Smith, J. The question in this case is whether the sale and conveyance which the testator made of his farm, in his lifetime, after the execution of his will, operated as a revocation *pro tanto* of the bequest to his nephews and nieces of the proceeds of the sale of his real estate.

The testator, by his will, first, gave all his personal estate to his wife, for her use and disposal; next, he devised to her all his real estate, during her life; lastly, he directed that, at her death, the real estate be sold, and the avails, after paying debts, be divided among his nephews and nieces therein named; and he appointed his wife executrix, and the respondent executor of his will.

Unquestionably, the sale of the farm was a revocation of the devise to the wife of an estate therein, during her life. To that extent, at least, it was inconsistent with the plan of the will. The appellants' counsel is, therefore, mistaken in supposing that the sale by the testator was simply equivalent to an execution by him of the power of sale conferred upon the executors; by the terms of the will, they could not execute the power until the death of the widow, thus preserving her life estate, but the life estate given to her by the will was absolutely cut off by the sale made by the testator. He procured her to join in the conveyance, thus cutting off even her right of dower.

If the will, instead of giving the nephews and nieces the proceeds of the land after the life estate of the widow, had given them the land itself in fee, it is clear that the devise of such estate in remainder, as well as the life estate of the wife, would have been revoked by the sale. (2 R. S., 65, §§ 47, 48.) The case is the same with respect to the proceeds. The direction to convert the real estate into personalty after the death of the widow, was merely for the convenience of distribution.

Although the sale of the farm operated as a revocation of the gift of a life estate to the wife, it was not designed to enlarge the gift to the nephews and nieces at her expense. It was made in view of the provision of the will, giving to her all the personal estate. Indeed, the will secured to her the use of the entire estate, real and personal; of the personalty, absolutely, and of the realty, for life. That provision is its prominent and controlling feature. Without it, the whole scheme of the will would fail. I am satisfied that the intention of the testator will be subserved by holding that,

as the clause giving the wife a life estate in the land, was revoked *pro tanto* by the sale of the farm, so the bequest of the proceeds of the farm, to be made by a sale thereof after her death, was revoked in like manner, and that the avails of the sale made by the testator passed under the general bequest of all the personal property to the wife.   In short, the provisions of the deed were wholly inconsistent with the terms and nature of the testamentary disposition of the farm, including the power of sale and of distribution of proceeds, and, therefore, operated as a revocation thereof. (§§ 47, 48, *supra.*)

For these reasons I am of opinion the judgment of the Supreme Court should be affirmed, with costs.

All the judges concurring,

Judgment affirmed.