## MONROE COUNTY SURROGATE'S COURT.

In the Matter of the estate of PATRICK DOWD, deceased.

*Will — what will work a revocation — who may not claim as residuary lega-
tees — Effect of alteration of the interest of the testator in the property
devised after execution of the will.*

Where a testator sells and conveys all of his real estate previously devised
by him, his estate and interest therein is *wholly divested,* and not merely
altered.

At common law the least alteration of the interest of the testator in prop-
erty devised or bequeathed by him, would work a revocation of the
devise or bequest of such property.

An alteration of the nature or character of the interest of the testator
in the property devised or bequeathed does not, under the provisions of
sections 42 and 48 of 2 Revised Statutes, 64, in all cases work a revoca-
tion in respect to such property.

But where the testator, in his lifetime, wholly divests himself of the
property previously devised or bequeathed, the revocation is, as to such
property, as complete and perfect as it was at common law.

A testator, by his will, bequeathed to his wife all his personal estate and
the use for life of all his real estate, and authorized his executors,
together with his wife, to sell and convey his real estate, and to deposit
the avails in a savings bank, his wife to receive, from time to time,
while any of the fund so deposited remained, sufficient for her support
during her life, and if any of the avails of such sale remained after
paying such expenses, together with her funeral expenses, and the
reasonable expenses of the executors, the balance to be paid to St.
Mary's Roman Catholic Church and the Roman Catholic orphan
asylum. The testator, in his lifetime, and after the execution of the
will, sold all his real estate and deposited the avails in the Rochester
Savings Bank, such avails constituting his entire estate. His wife died
after this sale, but before the death of the testator :

*Held,* that the corporations named in this will could not take as legatees,
the subject-matter of the devise and bequest to them being totally
destroyed or changed by the voluntary act of the testator in his
lifetime.

The whole scheme of the testator's testamentary disposition was essen-
tially varied by him, and the law presumes a revocation in consequence
of the change in his family and property. The fact that he deposited

the avails of the sale of his real estate in the savings bank is not sufficient to rebut this presumption of law.

*Held,* further, that the Roman Catholic orphan asylum could not claim as residuary legatees.

When it is manifest, from the expressed words of the will, that the gift of the *residuum* is confined to the residuum of a particular fund, or description of property, or to some certain residuum, the legatee will be restricted to what is thus particularly given.

As in this case if the wife had survived there would have been no residuum as she would have taken the whole as personal estate ; she having died before the testator, and the entire estate, by his subsequent act, having become personal property, and being such, at the time of his death, it is to be treated as a lapsed legacy, and in the absence of a legatee capable of taking under the will *pro tanto* revoked, it must be distributed to the next of kin, under the statute of distribution.

Is the provision of the act of 1848 as to devises and bequests for charitable uses repealed by the act of 1860, "relating to wills" (*Chap.* 360, *Laws of* 1860), *quære.*

*September,* 1879.

PATRICK DOWD, late of Brighton, Monroe county, made his will March 20, 1863. He bequeathed to his wife, Elizabeth Dowd, all his personal estate, and the use, for life, of all his real. He authorized his executors, "together with his wife," to sell and convey his real estate, and to deposit the avails of the sale in one of the savings banks in Rochester. He directs that his wife should be entitled to receive from his executors, from *time to time,* while *any of the fund so deposited* remained, sufficient thereof, to procure her a convenient and comfortable place to live, together with all necessary food and clothing, and all necessary medical attendance, and other necessaries in sickness. He then provided as follows :

" If any of the avails of such sale or sales of my real estate shall remain, after paying the expenses above mentioned, together with the funeral expenses of my said wife Elizabeth, then, after such reasonable expenses as my said executors shall be entitled to, then, when such money shall be received by my said executors, they shall pay to St. Mary's Roman Catholic Church, in the city of Rochester, such sum as shall

remain, not exceeding $100 in amount, and if any more of such money remain, the same shall be paid over to the Roman Catholic orphan asylum in the city of Rochester."

The testator, in his lifetime, after the execution of the will, sold all his real estate, and deposited the avails in the Rochester Savings Bank. These avails constitute his entire estate.

His wife, Elizabeth Dowd, died after this sale, but before the death of the testator. The next of kin of the testator are his nephews and nieces. They claim his entire estate, after payment of debts and expenses of administration. The Roman Catholic church, and Roman Catholic orphan asylum claim to take such residue, respectively, as legatees under the will.

MONROE, *Surrogate.* — By the sale and conveyance of the testator of all his real estate, previously devised by him, his estate and interest therein was *wholly divested*, and not merely altered.

At common law, the least alteration of the interest of the testator in property devised or bequeathed by him, would work a revocation of the devise or bequest of such property (4 *Kent*, 529). Our Revised Statutes specially define what shall be an express revocation, and what shall be an implied, or, in other words, what shall be " *deemed* " a revocation (*Sections* 42–48, 2 *Revised Statutes*, 64). An alteration of the nature or character of the interest of the testator, in the property devised or bequeathed, does not, under the provisions of these sections, in all cases, work a revocation in respect to such property.

But, I apprehend, there is no doubt, where the testator, in his lifetime, wholly divests himself of the property previously devised or bequeathed, the revocation is, as to such property as complete and perfect as it was at common law (*Beck* agt. *McGillis*, 9 *Barb.*, 35 ; *Brown* agt. *Brown*, 16 *Barb.*, 572 ; *Vandermark* agt. *Vandermark*, 26 *Barb.*, 418 ; *Adams* agt. *Wynne*, 7 *Paige*, 97 ; *McNaughton* agt. *McNaughton*, 34 *N. Y.*, 201).

The will speaks as of the time of the death of the testator; the rights of all devisees, legatees, heirs and next of kin hinge upon that period of time. If the wife had survived the testator, she would have taken the entire estate, all the personal, and all the real converted into personal property before the death of the testator. She would have been sole legatee of "all the testator's personal estate." I think the corporations named in the will cannot take as legatees. The subject-matter of the devise and bequest to them was wholly destroyed or changed by the voluntary act of the testator in his lifetime. The whole scheme of his testamentary disposition was essentially varied by him, and the law presumes a revocation in consequence of the change in his family and property. The fact that he deposited the avails of the sale of his real estate in the savings bank is not sufficient to rebut this presumption of law (*See Adams* agt. *Wynne*, 7 *Paige*, 99). It is quite possible that, but for this revocation by the act of the testator, the ulterior devise to these corporations would have taken effect on the failure of the primary devise, by the death of the wife in the lifetime of the testator (*McLean* agt. *Freeman*, 70 *N. Y.*, 81). But I am unable to see how, unless by a republication after such revocation, their claim to the bounty of the testator under this will can prevail.

The Roman Catholic orphan asylum cannot, I think, successfully claim, as residuary legatees, for another reason. When it is manifest, from the express words of the will, that the gift of the *residuum* is confined to the residuum of a particular fund, or description of property, or to some certain *residuum*, the legatee will be restricted to what is thus particularly given. In this case the thing given is gone (*Dayton on Surrogates, page* 440). If the wife had survived there would have been no *residuum;* she would have taken the whole as personal estate. As she died before the testator, and the entire estate, by his subsequent act, became personal property, and was such at the time of his death, it is to be treated as a lapsed legacy, and, in the absence of a legatee

Matter of Dowd.

capable of taking under the will *pro tanto* revoked, I think it must be distributed to the next of kin, under the statute of distribution.

This view of the case renders it unnecessary to decide the interesting question involved in the construction of the statutes on the subject of devises and bequests to charitable uses.

The change in the phraseology in the latter statute (*Section 1, chap. 360, Laws of 1860*) by substituting the word "having" for "leaving," found in section 6, chapter 319, Laws of 1848, is noticeable, although it seems to have been ignored by the court of appeals in *Lefevre* agt. *Lefevre* (59 *N. Y.,* 434). In that case the majority of the court apparently hold that the provisions of the earlier statute on this subject, limiting the time for a valid devise or bequest to benevolent and charitable societies, were not repealed by the latter act. Section 2 of the act of 1860 repeals all laws inconsistent with the act, and the court characterizes *only* that part of the proviso of section 6 of the act of 1848, which forbids the taking, by the corporations named, of a devise in a will not made more than two months before death, as being in harmony with the act of 1860. The fair inference is that all other provisions of the earlier act are inconsistent with the latter.

The word "having" may be construed as referring only to the time of the execution of the will without involving the serious consequences urged by way of argument against such interpretation, inasmuch as under sections 43 and 44 Revised Statutes above referred to, the subsequent marriage of a *testator,* followed by birth of children, or a subsequent marriage *alone* of an *unmarried testatrix,* are to be "*deemed*" revocations of their wills respectively. It seems, therefore, not unreasonable to infer that the legislature intended by the act of 1860 to designate the *time of the execution of a will* as the period of time when the restrictions therein provided for were to be operative. This impression is fortified by the fact that the earlier act was passed, not so much for the protection of families as to cater to a popular sentiment then

quite prevalent. As already stated, however, we do not deem it necessary to pass upon this question in this aspect not yet, so far as we are aware, sharply presented to the court of last resort.