*In re* BABY'S WILL.

(*Surrogate's Court, New York County.* January 8, 1889.)

**1. WILLS—REVOCATION—EXECUTION OF SECOND WILL.**

Testator devised realty to his wife, and directed that any liens existing thereon should be paid from his residuary estate. The residuum was then devised to three persons. Afterwards he conveyed the property, on which there was then a mortgage, to his wife, and still later made another will, without referring to the property or liens. The disposition of the residuary estate was different from that made by the first will, it being given in trust for four beneficiaries. The second will did not expressly revoke the first. *Held*, that the conveyance of the property, the silence of the second will regarding it and the liens thereon, and the difference between the provisions of the two wills, indicated the testator's intention to substitute the second for the first, and that the clause regarding liens was revoked by the second will.

**2. SAME—CONFLICTING PROVISIONS.**

The first will gave the residuary estate, subject to the other provisions therein, to three persons, as tenants in common. The second gave the realty (part of the residuum) to the executor, in trust to sell the same at such time, within two years after testator's death, as he should deem best, and divide the proceeds among four persons. *Held*, that as to the realty the provisions of the former will were revoked,

and that the rents and profits during the time that might elapse before the power of sale was exercised did not pass by the residuary clause of the former will, but should be divided among the four beneficiaries under the trust.

Linda F. Butler offered for probate, as the will of Francis R. Baby, deceased, a paper bearing date May 23, 1870. Albert F. Baubie, decedent's brother, contested the will, alleging that a subsequent will, already probated, wholly revoked the former one.

*Abbott Bros.*, for proponent. *Knevals & Perry*, for contestant.

RANSOM, S.    The facts upon which this application is made are set forth in the petition and answer, and have been agreed to formally by the parties, as follows:  On May 23, 1870, Francis R. Baby made and executed a will, in which he devised his dwelling-house, No. 203 West Fourteenth street, in the city of New York, to his wife, Hilda S. Baby, and also made the following provision concerning the same: "If, at my decease, there shall be any unpaid taxes, assessments, mortgages, or other incumbrances upon or against said property, it is my will, and I direct, that the same be paid and discharged from my residuary estate, hereinafter mentioned." Then he devises his residuary estate to three beneficiaries in equal parts, to-wit: His wife, since deceased; his step-daughter, the petitioner; and his half-brother.  On March 9, 1875, said Francis R. Baby conveyed this Fourteenth-Street property to his wife, Hilda S. Baby, for a nominal consideration, and love and affection, through Francis W. G. Bellows, as intermediary; both deeds being duly recorded in the office of the register of the city and county of New York, March 16, 1875. Upon this same property there then existed a certain mortgage of $15,000, upon which $5,000 was then due, and which was paid and discharged May 25, 1877, as appears by the record thereof.  Hilda S. Baby, the wife of decedent, died in 1882, leaving a last will and testament, which was duly admitted to probate in this court, and in which she appointed her husband, Francis R. Baby, the decedent herein, the executor of her will, and directed the payment to Linda F. Butler, her daughter, the petitioner herein, of the rents and profits arising from said property during her life-time.  On March 19, 1888, Francis R. Baby died, leaving a last will and testament, duly executed, and dated May 5, 1879, which was duly admitted to probate in this court, on April 5, 1888.   The executor named in such will having deceased, the said Linda F. Butler was appointed administratrix with the will annexed, on her own petition, on April 27, 1888.   Such will, after payment of debts, devises all the rest, residue, and remainder of the estate to his executor therein named, to be divided equally among four beneficiaries, naming them, to-wit:  His wife, since deceased; his brother, the contestant; his half-brother; and his step-daughter, the petitioner.    The decedent, Francis R. Baby, died, leaving, with personal property, real estate, which has not been sold, and on which there will be rents and profits between the time of his death and the sale of the property.

The probate of the will of May 23, 1870, is opposed by the brother of the decedent.    The main object and purpose in procuring the probate of this paper seems to be to give effect to the clause therein contained, directing that all taxes, assessments, mortgages, or other incumbrances existing against the Fourteenth-Street property should be paid from decedent's residuary estate. The will of May 5, 1879, contains no provision regarding this property, because, in my opinion, the testator's intention, by the conveyance of the said property to his wife in his life-time, was to divest himself of all title thereto or ownership therein.    The fact that this property was duly conveyed to his wife subsequent to the date of the will of 1870, coupled with the fact of his failure to refer to it in the most remote way in his will of 1879, undoubtedly indicates that his intention, by the conveyance, was to revoke entirely the provision of the first will respecting it.  In *Vandemark* v. *Vandemark*, 26 Barb.

416, the testator devised to each of his three sons a farm, charged with certain payments to his two daughters. He subsequently conveyed one of the farms, with the exception of a few acres. Upon his death the probate of the will was opposed on the ground of revocation. The surrogate admitted the will to probate, and, upon the appeal to the general term, HARRIS, J., held upon this point that the sale and conveyance of the principal part of the farm devised to the appellant operated as a revocation, not of the whole will, but of the devise therein, to the extent that the testator had divested himself of the property devised. See, also, *Adams* v. *Winne*, 7 Paige, 97; *Philson* v. *Moore*, 23 Hun, 153; *In re Dowd*, 58 How. Pr. 107. In *McNaughton* v. *McNaughton*, 34 N. Y. 201, it was held, Justice PORTER writing the opinion, that, "when the will took effect by the death of the testator, the farm, which he owned at its date, had ceased to be a portion of his real estate. If there had been a specific devise to the appellant of the farm, the sale of it by the donor in his lifetime would have operated as a revocation of the gift." See, also, *Barstow* v. *Goodwin*, 2 Bradf. Sur. 413.

The case at bar is, in my judgment, much stronger than those cited; for in addition to the testator's conveyance of the Fourteenth-Street real estate, there is a later will, disposing of all the testator's property. There is no doubt but that the will of 1879 completely disposes of all the property of the testator, and that such was his intention; and it is unnecessary here to determine what becomes of that part of the residuum bequeathed to his deceased wife by this will.

I come now to the second point raised by the petitioner,—that by the will of 1879 the testator made no disposition of the rents and profits of his real estate between the date of his death and the sale thereof, while by the will of 1870 such disposition is made. A comparison and analysis of the clauses referring to this property in the respective wills shows that by the will of 1870 the residuary clause is as follows: "All the rest, residue, and remainder of my estate, real, personal, and mixed, and wheresoever situate, whereof I may die seised or possessed, or to which I may be entitled at my decease, subject, however, to the execution of the aforesaid provisions of this, my will, as to my residuary estate, I give, devise, and bequeath unto my said wife, Hilda S. Baby, my said step-daughter, Linda F. Baby, and my said half-brother, William O. Caldwell, as tenants in common, and not as joint tenants, to be equally divided between them, share and share alike, and to have and to hold the same unto them, respectively, their heirs and assigns, forever." The will of 1879 contains this provision: "As to the realty of my estate, it is my will that, at any time within two years after my decease, my said executor and trustee, hereinafter named, do sell the same at such time, in such portions, on such terms, and for such price, as in his discretion shall best serve the interests of my estate, and its beneficiaries, and divide the proceeds of such sale among the four persons heretofore named, in equal proportions, share and share alike; and in aid of this provision of my will I do hereby give to my said executor and trustee full power to sell and convey, all and singular, my real estate, wherever the same may be situated, at such times, (within two years after my death,) in such portions, on such terms, and for such price, as shall in his discretion carry out best the intent of this, my will,—giving him further full power to make, execute, and deliver any and every instrument necessary to fully protect such sale or sales." By the will of 1870 the property is given directly and outright to the three residuary legatees named, while by the will of 1879 it is devised to a trustee, in trust for four residuary legatees, to sell within two years from the time of testator's death. The two provisions are wholly inconsistent; that found in the will of 1879 being completely revocatory of that of the will of 1870. It would be error to hold that the rents and profits of the real estate devised by the second will are undisposed of for whatever time within two years may elapse before the trustee exercises the power of

sale. Whatever rents and profits may accrue in such intervening period of time will go to the devisee with the proceeds of the sale. The application must be denied.