## In re VAN BEUREN'S ESTATE.

### (Surrogate's Court, New York County.    February, 1891.)

1. WILLS—CONSTRUCTION—CODICILS—REVOCATION.

   Testator, in the fourth paragraph of his will, directed the interest on a certain bond and mortgage to be paid to one of his brothers.    By the fifth paragraph, all the residue of his estate was given to trustees who were directed to sell the real estate, and the proceeds were to be held in trust for the payment of an annuity to another brother and certain legacies; and on the death of the annuitant the balance of the estate was to go to a nephew.    The sixth paragraph directed that all legacy and succession taxes and expenses should be paid out of the proceeds of the sale of the real estate, so that each annuitant should receive the whole income of the sum held in trust for him.    By a codicil, the fifth paragraph was revoked to the extent that, after the annuities and legacies therein provided for were paid, the residue of the estate should be divided between two of testator's nephews.    *Held*, that this did not revoke the sixth paragraph, and that taxes and expenses are still to be paid out of the proceeds of the real estate.

2. SAME—INSANE LEGATEES—SPECIAL GUARDIAN.

   One whose law firm are attorneys for the residuary legatee under such will is not a proper person to be appointed special guardian of one of testator's brothers, who is a person of unsound mind, in a proceeding to obtain a construction of the will.

Accounting by the executors of the will of Gerardus A. C. Van Beuren.

*John L. Hill,* for executor.    *Shannon & Ballard,* for Oliver Van Beuren. *M. J. Mulqueen,* for special guardian.

RANSOM, S.    Upon the accounting of the executors, construction of the will is asked by one of them, and by the special guardian appointed to represent Samuel D. Van Beuren, a person of unsound mind, and one of the annuitants under the will.    By the fourth paragraph of the will two bonds and mortgages, aggregating $8,000, are bequeathed to the executors in trust, "to set apart and hold the same, to receive the interest thereon, and pay the same over as it accrues to my brother Samuel D. Van Beuren, of Ulster county, New York, for and during his natural life."    By the fifth paragraph of the will the trustees are given all the rest, residue, and remainder of the estate of every description,—the real estate to be sold either at public or private sale, as they may deem best; and, after paying the debts, funeral expenses and small gifts, the trustees are directed to hold the same in trust, "to set apart, invest, and hold the proceeds thereof, to receive the interest thereon as it accrues, and pay over to my brother Simeon B. Van Beuren, of New York city, during his natural life, the sum of $600 a year out of the interest so received." Upon the death of Simeon, a bequest to the testator's nephew John of $2,000 is made upon the happening of a certain contingency.    Three other legacies are directed to be paid from this residuum, and the balance to go to Theodore, a nephew of the testator, and his heirs, "to his and their own use and benefit forever."    By the sixth paragraph of the will it is directed that "all legacy and succession taxes and expenses, which may be payable in respect of the bequests and devises in this will contained, I direct to be paid out of the interest from the proceeds of the real estate, so that each annuitant receive the whole of the income derived from the principal sum held in trust for his or her benefit; and, should any of the legacies herein lapse, the same shall be distributed among my surviving nephews and nieces, (excepting Theodore,) share and share alike.    Those leaving lawful issue them surviving, such issue shall receive the share the parent would have taken if living."    In the fourth paragraph of the codicil it is ordered and directed that paragraph fifth of the will be amended so as to read as follows: "*Fifth.* I give, devise, and bequeath to my trustees all the rest, residue, and remainder of my estate, real

and personal, of every description and wheresoever situated, of which I may die seised and possessed; the real estate to be sold as soon as may be in their discretion, either at private or public sale, as they may deem best. for the interest of my estate, in trust." The paragraph then directs that, after the debts and funeral expenses are paid, the interest or income on a certain bond and mortgage for $12,000 is to be paid to a nephew of decedent during his natural life, and upon his death the trustees are directed to assign the said bond and mortgage, or the proceeds thereof, half to his nephew John and his heirs, and half to his nephew Oliver and his heirs. The paragraph further directs that the trustees set apart and invest out of said residuary estate, or the proceeds thereof, the sum of $12,000, and pay the income thereof to testator's brother Simeon during his natural life, and that upon his death the said sum be divided equally between testator's two nephews, John and Oliver, and their heirs. The paragraph then directs that from the residuary estate, or the proceeds thereof, certain legacies be paid, and then provides that "they [the trustees] divide the remainder of my said residuary estate equally, and pay one-half thereof to my nephew John and his heirs, and the other one-half thereof to my nephew Oliver and his heirs; and I here revoke all of said paragraph 5th in my said will omitted from this paragraph of this, my codicil."

It is claimed by Executor Lockwood and the special guardian representing the brother of unsound mind that, by the sixth clause of the will, the testator intended that the annuitants provided for in the will should receive the full amounts of their annuities free and clear of any charge or expense of administration whatever. On the other hand, it is contended in behalf of one of the residuary legatees that the intention to this effect which certainly existed at the time of the execution of the will was nullified and destroyed by the terms of the codicil above set forth. The provision of the sixth paragraph of the will was not revoked expressly and in words by the codicil. The question here seems to me to be of easy solution. As was said by DENIO, J., in *Pierrepont* v. *Edwards*, 25 N. Y. 131: "The authorities upon the question are very numerous * * * that no positive rule of ready application to every case can be laid down, but that each case will depend upon a consideration of all the material provisions of the will to be construed, and of the extrinsic circumstances respecting the testator's family and estate, which may be fairly brought to bear upon the question of intent. The leading principle of the cases is that when the testator bequeaths a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund." While there were two justices dissenting to this opinion, there was no dissent to the proposition above set forth. There being no express revocation of the sixth paragraph of the will, we must be guided by the terms and expressions of the entire paper, aided, if possible, by material extrinsic facts and circumstances, if there be any. Concerning the annuity to Samuel D. Van Beuren, there is much to be said which would indicate an ever-present intention in the testator to provide for him to the full extent of the will. As suggested by the special guardian, the testator was unmarried, and worth upwards of $200,000. He made his two nephews his residuary legatees. Desiring to provide for his brother Samuel, he gave him an annuity on $8,000. It must be held, in view of the sixth paragraph of the will, that the testator realized there might be charges and expenses connected with the administration of this trust, and intended to relieve this legacy therefrom. To my mind the codicil evidences no change in the intention of the testator that the annuities should be paid without deduction; in other words, they are demonstrative legacies. The fifth and sixth paragraphs of the will indicate that, after provision is made for the

payment of the full amount of the annuities, the residuary estate is to be held in trust until the happening of a certain event, viz., the demise of the testator's brother Simeon, and then, after the payment of certain legacies, to go to testator's nephew. The codicil changes the will only so far as the residuary estate is affected; for, after setting apart certain trust funds and paying certain legacies, the trustees are directed to divide the remainder of the residuary estate equally between testator's two nephews. By the will, the testator created a trust of his residuary estate, to continue during the life of his brother Simeon, to secure him an annuity of $600; and by the codicil a certain sum was set apart that would produce the annuity, and the residuary estate directed to distributed. When this proceeding was submitted on the call of the calendar, I was informed by counsel that the special guardian proposed by them would be a proper person to represent the party of unsound mind. He was appointed, and submitted his report finding the account correct. An examination of the papers disclosed the fact that the special guardian's law firm were the attorneys for the residuary legatee, and that the interest of his ward was in sharp conflict with the interest of his client. The order appointing him was instantly vacated, and a gentleman appointed who had no interest adverse to that of his ward. His report is precisely contrary to that of his predecessor, and, as will be seen, I fully agree with him. The office of special guardian is one of great importance, and the lawyer appointed should have no possible interest adverse to that of his ward. He must act independently of all persons having or claiming any interest in the estate. He should be fearless in investigation and aggressive in policy. He is the right arm of the court, in its zealous care of the infant or other incompetent persons. He should stand free from the suspicion even of holding any relation to any other party whose interests are not identical with those of his ward. I have no reason to suppose that the special guardian, whose appointment in this matter was contrary to the above doctrine, had any ulterior motive, and no doubt his report was the result of candid consideration of the rights of his ward; but his obligations to his client, the residuary legatee, were such that his appointment as special guardian of this lunatic was improper, as his interests under the will were adverse to those of the residuary legatee.