(Surrogate's Court, New York County. September 26, 1913.)

1. WILLS (§ 486*)—ACTION TO CONSTRUE WILLS—SURROGATE—JURISDICTION.
    The Legislature by the acts conferring power upon the surrogate to construe wills intended to invest him with the power and jurisdiction to consider appropriate extrinsic evidence.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1016–1022; Dec. Dig. § 486.*]

2. COURTS (§ 27*)—GENERAL GRANT OF JURISDICTION.
    A general and unrestricted grant of jurisdiction usually implies and carries with it powers necessary to make the jurisdiction effectual.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 84–87; Dec. Dig. § 27.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 194*)—REVOCATION—DISPOSITION OF PROPERTY. . . .
    The subsequent sale by testatrix of a house and lot which she had previously devised upon trust for her son operated as a revocation of such devise.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 481–489; Dec. Dig. § 194.*]

4. WILLS (§ 858*)—RESTRICTION OF RESIDUARY CLAUSE.
    Where testatrix devised to one of her sons a house and lot, and to the other the remainder of her property, thus approximately equally dividing her property between them, the devise of the remainder was not a true residuary gift, but rather in the nature of a specific legacy or devise; and hence, if there is a revocation or failure of the devise of the house and lot, it will not go to such residuary legatee or devisee, but pass to those entitled under the statute governing descents from an intestate.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173–2183; Dec. Dig. § 858.*]

In the matter of the probate of the will of Mary A. Sinnott, deceased. On objections of Edward Sinnott. Will construed.

John F. Clarke, of Brooklyn, for John J. Sinnott, executor.
William C. Wolf, of New York City, for Edward Sinnott.

FOWLER, S. This cause involves the construction of a will entitled to probate in a proceeding where construction is properly justiciable under the Code of Civil Procedure. The testatrix left two sons her surviving, her only next of kin and heirs at law. By her will she devised the house and lot known as No. 508 West Thirty-Seventh street, borough of Manhattan, to her executor in trust, to receive and collect the rents and to apply the net profits of the same for the benefit of her son Edward during the life of his wife, and upon the death of cestui que vie remainder to Edward, if then living, in fee, and if not remainder over, etc. The precise nature of the remainders contained in the limitation in trust it is not now essential to consider at length. Subsequently to making her will it appears that testatrix in her lifetime sold the said house and lot so devised for the benefit of Edward, taking back a mortgage to secure a part of the purchase money, about $16,000 in all. The will contained a residuary clause giving all the rest, residue, and remainder of the estate to her son Dr. John J. Sinnott, the executor.

In behalf of Edward Sinnott it is claimed that the proceeds of the sale of the house mentioned, some $16,000, are to be held by the executor under the trusts limited for the benefit of Edward. In behalf of the executor it is argued, on the other hand, that the sale of the house and lot in question by testatrix herself in her lifetime operated as a revocation of the prior devise in trust for the benefit of Edward, and that the proceeds of such sale consequently go to the executor, Dr. Sinnott, under the residuary clause of the will now presented for construction. As the house and lot represented the moiety of the estate of testatrix, or at least the only provision for Edward, if the construction of the executor prevails it may result in Edward's receiving no share of his mother's estate or benefit therefrom unless another rule, which I shall advert to later, is applicable.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

When the surrogate was invested with power and jurisdiction to construe a devise or testamentary gift, doubtless his powers were intended to be those of prior courts of construction in this state. In a proper case extrinsic evidence elucidating construction and receivable by such other courts of construction may be considered, I think, by the surrogate when called on to construe a will. I have had occasion to make this intimation in other cases of construction coming before me. Matter of Raab, 79 Misc. Rep. 185, 139 N. Y. Supp. 869; Matter of Swartz, 79 Misc. Rep. 388, 395, 396, 139 N. Y. Supp. 1105. This precise point, however, hardly arises with precision here, and I will not now dwell on it, as the sale of the house and lot referred to and the condition of the estate of testatrix are conceded, as I understand, by the parties to this controversy. At least it is the evident desire of the parties before me that the surrogate shall consider such extrinsic facts and I am willing to promote this desire in so far as I have the power so to do, so as to put at an end the necessity of further litigation.

[1] My own conception is that the Legislature by the acts conferring a power to construe intended to invest the surrogate with the power and jurisdiction to consider appropriate extrinsic evidence in a case of construction.

[2] A general and unrestricted grant of jurisdiction usually implies and carries with it powers necessary to make the jurisdiction effectual.

[3] The immediate and pressing question in this cause is whether the sale by testatrix of the property devised on trusts by her prior will was intended to revoke such devise for the benefit of her son Edward. If so, she may have disinherited her son. Prior to the Revised Statutes a wise chancellor would, I think, have endeavored to prevent if possible such a harsh result of a merely constructive revocation of a devise for the benefit of a son. Statute which long has been the popular remedy for public ills is sometimes unexpectedly rigid and harsh in directions not foreseen by its draftsmen. This is an objection to meddlesome legislation. Has the statute in this instance materially changed the prior law relative to an implied revocation by reason of a change in the situation of the testator's estate after the execution of a will?. This is the first question to consider.

Prior to the Revised Statutes the old law relating to implied or presumptive revocations—sometimes termed "acts in law"—was not wholly satisfactory. The important alterations made by the Revised Statutes, however, related mainly to express revocations. In respect of implied revocations the reviser's intention was to settle doubts arising by reason of conflicting decisions rather than to change materially the prior law, which was founded on the highest equity and the result of the deliberate consideration of many great and distinguished chancellors of both this state and England. See reviser's notes to the R. S. In respect of the law of implied or constructive revocations the Revised Statutes were, I think, more of a codification than a reform. The sections of the Revised Statutes in question are now transferred to the "Decedent Estate Law" (Consol. Laws 1909, c. 13, §§ 25–41), and receive, of course, the same construction accorded to the Revised Statutes when in force.

The sections of the statute now applicable to this matter before me are sections 39 and 40, Decedent Estate Law (formerly 2 R. S. [1st Ed.] 65, §§ 47, 48). Prior to the enactment of any of these statutory provisions, if a testator alienated a thing he had previously devised or bequeathed, the devise or specific bequest was thereby presumptively revoked both at law and in equity, for the testator had himself put it out of his power to confer a title by will on his devisee or legatee to the testamentary gift. The difficulty with the old law was not that a complete alienation was always held to operate as a revocation, for that was inevitable, but that the slightest subsequent dealing by the testator with the thing devised too often vitiated or revoked the prior devise. See 1 Powell on Devises, 547; Lovelass on Wills, 352. The Revised Statutes intended to change this last condition of the law, but after that revision, as before it, a complete alienation by testator of a thing devised or bequeathed operated presumptively to revoke such devise or bequest. McNaughton v. McNaughton, 34 N. Y. 201, 203.

The hardship of the settled rule that an alienation by testator of a thing devised often defeats the only provision for a testator's child has induced the court to seize hold of any consideration which rebuts the implication of revocation by a sale of the thing bequeathed or devised. If there is a conversion of realty, for example, directed by the will, or if the gift is not specific, it is held that the gift is not revoked by the sale of the thing devised or bequeathed. McNaughton v. McNaughton, 34 N. Y. 201, 203, 205; Brown v. Brown, 16 Barb. 569.

It will be observed that in this instance the devise is to trustees, which shows an intention on the part of testatrix to create a trust for the benefit of her son Edward, and it is asserted in his behalf a trust of about half of her estate, as the house and lot in question then amounted to about half of her estate. I am not quite sure that sufficient extrinsic evidence has been given to show that this was then the precise condition of the estate. That it is true, in fact, is conceded by counsel, and if necessary this matter could doubtless be reopened and the situation of the estate at the time of the devise and sale proved to me, so as to make the record on this point clearer.

Where a trust for a son is created by a will, the subsequent alienation of the property to be held in trust should not be construed as a revocation of the trust itself if it is possible to reach another conclusion. A whole will is not revoked by the mere alienation of one thing devised. Vandemark v. Vandemark, 26 Barb. 416. In most of the cases cited to me it will be observed that the element of trust in the devise was wanting, and the revocation by alienation concerned devises not on trusts. I have searched the books, in order to find some authority to the effect that devises on trusts were not always revoked by testator's subsequent alienation of the property devised on trusts, and to support the inference that where there was an evident intention to create a trust for a son the intention would be executed non obstante the testator's subsequent sale of the thing devised to a trustee. There is some remote support of such a principle in the chancery books (Rider v. Wager, 2 P. Wms. 3327), but I find nothing directly

in favor of so general a principle. In Hodges v. Green, 3 Russ. 28, it was held that a subsequent conveyance to trustees to sell for the benefit of testator's debts was not a revocation of a prior will, because it declares that the surplus money arising from the sale shall be the personal estate of testator. This is a somewhat remote recognition of the equitable principle I had in mind. But, unfortunately, it is held that where there is a substantial alteration by testator in his lifetime of estates which he had previously devised in trust the devises on trusts are revoked under the general rule, notwithstanding the trusts. Lowndes v. Norton, 33 L. J. Ch. 583; Leigh v. Norbury, 13 Ves. 340; Philson v. Moore, 23 Hun, 152, 155. The hardship of the rule or the possible intention of testatrix is no reason for a failure to apply a rule of law. Beck v. McGillis, 9 Barb. 35, 59.

In this case now before me I fear that there is no escape from the conclusion that the subsequent sale of the house and lot by testatrix operated to revoke the devise to trustees for the benefit of Edward. In order to make out in this case an intention to create a trust by the testatrix it is necessary to establish that some res or property was intended to pass to the trustee. Hickok v. Bunting, 67 App. Div. 560, 562, 73 N. Y. Supp. 967. Here the difficulty is that the testatrix must be taken to have herself subtracted, as it were, the property devised on trusts, and thus is to be taken as herself revoking the trust. Thus the element of trust does not prevent in this instance the revocation by operation of law of the legal estate to trustees.

We are all familiar with the principle that equity prevents the defeat of a legacy revoked by reason of a mistake of fact, and this is manifestly most just; but this principle has no application here, even if the enlarged surrogate's jurisdiction in cases of construction extends so far as to enable him to apply it in a proper case, which I doubt. No effort has been made in this cause to show a mistake of fact on the part of testatrix—so this point is not now here.

[4] But another question does arise here, viz., do the proceeds of the subsequent sale of the thing devised pass exclusively to the son John under the so-called residuary clause? I take it that it is a general principle of law that, when it is apparent that a testatrix did not intend property to pass under a residuary clause, it or its avails will not so pass. This was substantially the conclusion reached, I think, in the Matter of Dowd's Will, 8 Abb. N. C. 118, and it seems a very just conclusion of a surrogate of this state. Results precisely contrary to the obvious intent of a testatrix, as evidenced by the face of her will, should not be effectuated by the court if it is possible to prevent them. Here testatrix on the face of her will made no difference between the amounts to accrue to the benefit of each of her two sons; but, unfortunately, by an alienation of the thing devised for the benefit of one of them, she in law is to be taken as having revoked one of the contemplated gifts. Is it then to be taken also in law that the consequence of this probably misunderstood act on her part inures to the sole benefit of her other son? Courts of justice are not inclined to defeat obvious intentions of testators by the application of technical rules. In Pierrepont v. Edwards, 25 N. Y. 128, 131, it was intimated that the solution of every case on a will depends on particular cir-

cumstances, and there is in that case, evident in the opinion, a freedom exercised in the strict application of technical rules in the interest of justice. The decision in effect is, as I interpret it, that technical rules must be applied only as and when it is just. Otherwise the purport of the decision just cited is not in point here.

The lapse or revocation of legacies or devises does not always cause such legacies or devises to pass under the residuary clause to the residuary legatee. Attorney General v. Johnstone, Ambler, 577; Springett v. Jennings, 6 Ch. 333; Patching v. Barnett, 28 W. R. 886, 889; In re Mason, Ogden v. Mason [1901] 1 Ch. 619, 628. In short, it is a general rule of construction that if the words of a will show that the testator intended the residuary bequest to have a limited effect the presumption in favor of the residuary legatee is rebutted. Suppose, for example, a testator having an only son devises or bequeaths to his son the bulk of his estate with the statement "that if anything remain, which is doubtful, the residue shall go to a faithful servant of his family," and the devises and bequest to the son prove void on technical grounds, would it be just that the servant take all? In such a case the residuary is treated as a specific legacy or devise, and "there is no true residuary gift (per Jessel, M. R., in Blight v. Hartwell, 23 Ch. D. 218, 222)." Of general equitable doctrines Jessel was a very great master, and his pronouncements are always entitled to be highly regarded as those of a philosophic and exact foreign jurist of high distinction. Nor do I think that the rules applicable in our own courts have departed from the equitable principles of construction just indicated. If they have I shall certainly make haste to follow them, as I am in duty bound to do, regardless of bad consequences in this particular case. The hard and fast rules concerning lapsed and void legacies and devises which pass under general and unrestricted residuary clauses are always founded on the presumed intention that the testator did not wish to die intestate, and that everything not really devised and bequeathed should go to his residuary devisee or legatee. It strikes me as most unjust to stretch this general rule so as to embrace this case before me, since there is something here to rebut the presumption that all was to go to John under this will.

In King v. Woodhull, 3 Edw. 79, the exception I have announced was, as it seems to me, recognized by the vice chancellor of this state, as it is in other adjudications of weight. Matter of Benson, 96 N. Y. 510, 48 Am. Rep. 646; Kerr v. Dougherty, 79 N. Y. 327; Stephenson v. Ontario Orphan Asylum, 27 Hun, 383; Goodwin v. Ingraham, 29 Hun, 221; Adams v. Massey, 184 N. Y. 62, 73, 76 N. E. 916. While Matter of Hoffman, 201 N. Y. 247, 94 N. E. 990, refers to the partial failure of a residuary bequest, some general expressions of the opinion seem also to be in line with the principle of the prior cases I have before noticed. I conceive that the numerous adjudications which carry void or lapsed legacies to a residuary legatee are founded on the single assumption that the gifts to the residuary legatee are not circumscribed by expressions contained in other parts of the will. When the residuary gift is so circumscribed, the residuary legatee is not allowed to take. In that case the residuary clause is not a "true residuary gift."

The ground upon which I prefer to rest my judgment in this matter is that the situation of the clause containing the testamentary gifts to her son John shows that this so-called residuary clause of the will before me was not a "true residuary gift," to use the expression of the eminent master of the rolls, before quoted, but rather in the nature of a specific legacy or devise to John. It is in this case just as if testatrix had said, "I give to John all of my estate except the house and lot given to Edward." While a residuary clause is not required to be in any particular form or place (Morton v. Woodbury, 153 N. Y. 243, 47 N. E. 283), yet its context and situation may be resorted to for the purpose of construction and to ascertain the intention of testatrix. I am unable at the moment to elaborate a more extended review of the adjudications on the points involved, but I am satisfied that their reasoning in the end justifies the conclusion I would reach.

My conclusion, in short, is that the proceeds of the sale of the house and lot originally devised for the benefit of Edward were not intended by testatrix to benefit John and that they should be held to pass as in the case of an intestacy. By this construction Edward will receive only one-quarter of the mother's estate and John three-quarters. This, however, saves something for Edward. Settle decree accordingly.