In the Matter of the Estate of WILLIAM ANDERSON, Deceased.

Surrogate's Court, Westchester County, March 28, 1932.

*Arthur Knox* [*Berthold Schmidt* of counsel], for the executor.

*Griffin & Hoag* [*Henry P. Griffin* of counsel], for the widow.

SLATER, S. In this judicial settlement of the account of the executor, a construction is sought of the gift in the will for the widow. The will was executed June 8, 1928. The decedent left his wife and a son, the executor herein. The widow was the step-mother of the son, having been married to the decedent April 30, 1912. The decedent died August 2, 1930. The will was executed a year and more before the financial panic of October, 1929.

The will gave all household goods and effects to the wife, and then gave money legacies amounting to $1,250 to a sister and nieces. He gave his interest in his general contracting business to his son, and then proceeded to give all the rest, residue and remainder of his property as follows:

" *Seventhly.* All the rest, residue and remainder of my estate, both real and personal wheresoever situate, I hereby give, devise and bequeath to my executor and trustee hereinafter named, to be held by him in trust for the purposes hereinafter named, to be invested and reinvested and managed, controlled, and according to his best judgment, to be reduced to income producing form, but I hereby authorize my said executor and trustee to continue so long as he shall deem wise such investments as I may have at the time of my death, with full discretion as to when, how and to what extent, if any, to sell, change and convert the same into cash or into investments of personal property of like or different form, hereby giving and granting to my said executor full power and authority to sell, transfer and convey and convert into cash the whole or any part of my said estate, real or personal, and to make, execute and deliver good and sufficient deeds, transfers or conveyances thereof.

"*Eighthly.* I hereby direct my said executor and trustee to pay out of the net income of said residuary estate the sum of One hundred and fifty (150) Dollars a month to my said wife Georgina C. Anderson, so long as she shall live or remain unmarried.

" *Ninthly.* I hereby direct my said executor and trustee to pay the balance of the net income of said residuary estate to himself, the said Alexander James Anderson, during the lifetime of my said wife Georgina C. Anderson, or as long as she remains unmarried; or in case my said son should die before my said wife I direct that the said balance of the net income directed to be paid to him be paid to or applied equally for the education and maintenance of his children, if any."

Upon the death or remarriage of the wife, the principal of the residuary estate with all accumulated income was given to the son in fee, " or in case of his death prior to my wife's death or remarriage, I hereby give, devise and bequeath such principal to his issue, if any, share and share alike. In case my said son should die without issue I hereby give, devise and bequeath the said principal of said residuary estate to my said sister, Elizabeth Webster, or in case of her death prior to the death of my said son without issue, to her issue share and share alike."

The next paragraph of the will states that " The provision made herein in favor of my wife is to be in lieu of her dower rights in any of my real property which I may die seized of."

The transfer tax proceedings indicate that the gross estate is $56,763.02. Deducting the funeral, administration expenses, debts and executor's commission, the net estate is $46,061.05. The account of proceedings shows that the decedent left real estate, viz., one-family dwelling, appraised at $13,000, subject to a mortgage of $7,500, and vacant lots appraised at $4,400.

Within the year after the commercial revulsion of October, 1929, the decedent died. Occasioned by the fact that decedent's securities are paying less dividends than in his lifetime, the income has fallen below the required sum of $1,800, the annual payment given by the will to the widow. The question up for consideration is whether the widow must be held to the *net income* of the estate and not exceeding $1,800, and, if the net income should be less than $1,800 per annum, whether the difference may be sought in the corpus of the trust. Must the gift of $150 ·per month abate to meet the amount of net income? Was it intended by the testator that the gift of $1,800 per annum should be paid at all events?

Evidence of extrinsic circumstances was taken with regard to the value of testator's estate and income thereon at the date of the will-making. (*Ely* v. *Megie*, 219 N. Y. 112, 127.)

Former Chief Judge CARDOZO, in his "Growth of the Law," wrote: "The law enforces the reasonable expectations arising out of conduct, relations and situations." So, it becomes my duty to transport the wise principles of former days and apply them to our own time.

A rule consistent with human conduct was applied in 1862 in *Pierrepont* v. *Edwards* (25 N. Y. 128), when the court decided a similar question arising out of the panic of 1857. Judge DENIO, writing for the majority of the court, said: "It will be seen, by an examination of them [the cases], that no positive rule of ready application to every case can be laid down, but that each case will depend upon a consideration of all the material provisions of the will to be construed, and of the extrinsic circumstances respecting the testator's family and estate, which may be fairly brought to bear upon the question of intent. The leading principle of the cases is, that when the testator bequeathes a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled, merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund." This legal doctrine, so benign, has been accepted by the American courts.

In this leading case, as in the instant case, the testator supposed

himself to have a clear income sufficient to pay the annuity, and to leave a surplus of income. It now appears that he was mistaken as to the sufficiency of his income and the question arises: What was the primary and material portion of the testator's intent?

It seems to this court that the widow should receive the sum mentioned, in all events. This annuity was the only money provision made for her. The executor contends that the gift must be strictly construed as applying to actual net income. It might happen that the wife would be without any means of support under this construction. In *Pierrepont* v. *Edwards* (*supra*) the court said: " It is suggested that his wishes and intentions will not be altogether disappointed, if, upon the failure of income, the body of the estate is kept unemployed during the lifetime or widowhood of his wife * * *." In answer the court said: " This view seems to me very unreasonable."

In the instant case the wife is the primary object of testator's consideration. To say less would sacrifice the substance and the primary intent of the will-maker for the sake of later provisions not intended to limit or control, or to render uncertain or conditional the provision in her favor. (*Tifft* v. *Porter*, 8 N. Y. 516; *Giddings* v. *Seward*, 16 id. 365; *De Nottebeck* v. *Astor*, 13 id. 98.)

The same humane instinct of right and justice, the convictions of the period following the panic of 1857, have survived to become the convictions of our day and times. Now, as then, it is the same conviction and philosophy which the courts accord on similar situations growing out of the panic of 1929. Problems of this character only come in cycles of business depression. When business is normal and continuous, a man can figure his annual income from his securities, as the testator probably did when he selected the sum of $150 per month to be paid to his wife. He knew that she had little income and this amount was for her support and maintenance. As the *Pierrepont* v. *Edwards* case followed the panic of 1857, so this and similar cases will follow the world-wide depression beginning in the fall of 1929.

*Pierrepont* v. *Edwards* (*supra*) was followed in *Matter of Haviland* ([Westchester County], General Term, 49 Hun, 301 [1888]) and approved in *Matter of Van Beuren* (13 N. Y. Supp. 261 [1891]). The principle laid down in *Pierrepont* v. *Edwards* has not been criticised or reversed. It is one of the high points in judicial construction that appeals to both heart and mind.

In *Matter of Haviland*, as in the instant case, the widow accepted the annuity in lieu of dower, and, consequently, the testator owed the annuity as purchase money. A similar ruling is found in *Rowe* v. *Lansing* (53 Hun, 210, 212).

In *Delaney* v. *Van Aulen* (84 N. Y. 16 [1881]) the facts were different from those in *Pierrepont* v. *Edwards*. But the court wrote with approval of the principle laid down in the *Pierrepont* v. *Edwards* case. The court, referring to English cases, said: " We think though that later adjudications have somewhat relaxed the rule, looking at the purpose that first set it up, viz.: by a liberal construction of the words of the testator * * *. Indeed, it may now be said that there is no principle whatever involved in these cases, save to ascertain what is the testator's intention * * *," and concluding by saying: " We cannot fail to perceive that the rigid rule stated in *Allan* v. *Backhouse* (2 Ves. & B. 65) has been relaxed, and that the courts may now exercise their judgment."

*Smith* v. *Fellows* (131 Mass. 20, 22 [1881]) follows this rule in a decision laid upon similar facts. The court held that the whole estate was charged with the payment of the annuity and that the gift was rather in the nature of a demonstrative legacy. It cited and followed *Pierrepont* v. *Edwards* (*supra*); *Matter of Schaaf* (120 Misc. 292, 294); *Matter of Lloyd* (166 App. Div. 1).

The decedent set a pecuniary value upon the gift which he intended to make to his wife. This is not a mere bounty legacy; it is a legacy given in consideration of her relinquishment of dower in the land left by the decedent and is a clear evidence of his intention to protect the wife and to provide for her at all events. This consideration appeals strongly to the courts. (*Matter of Smallman,* 138 Misc. 889, 905.)

A provision in a will intended for the support of a wife should receive the most favorable construction to accomplish the construction intended. (*Thurber* v. *Chambers,* 66 N. Y. 42; *Stimson* v. *Vroman,* 99 id. 74, 80.) The intention of the testator must be our absolute guide in construing the will. (*Williams* v. *Jones,* 166 N. Y. 522, 532; *Matter of Rooker,* 248 id. 361.) To ascertain the intention of the testator in these cases is nothing more unusual than a common sense appraisal of probabilities and meanings. (*Matter of Gallien,* 247 N. Y. 195.)

Results contrary to the obvious intention of the testator should not be effectuated by the court, if it is possible to prevent it. Courts of justice are not inclined to defeat the obvious intent of the testator by the application of technical rules. Technical rules must be applied only when and if they are just. Otherwise, the purport of the decision in *Pierrepont* v. *Edwards* is never in point. (*Matter of Sinnott,* FOWLER, S., 82 Misc. 219, 225.)

With reference to a gift of a legacy to near relatives, to a wife or children, the testator naturally expects that such legacies will be paid in full. " * * * It is the testator's mind we seek to

read * * *. To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light." By testator's intention is meant intention which existed at the time the will was drawn. What was the state of his mind at that time and what was the condition of his estate at such time? It should be assumed that the testator, in framing his testamentary scheme, contemplated that his property was sufficient in amount to carry it out in all detail. (*Matter of Neil*, 238 N. Y. 138.)

The executor submits *Matter of Dewey* (153 N. Y. 63) and kindred cases in support of his contention that the net income must suffice for the gift to the widow, even if it falls below the sum of $1,800 per annum. These cases are readily distinguishable because they have been decided upon facts wholly different from the instant case in that the payments of income were levied upon particular sums of money; in other words, the income of a money trust.

*Buchanan* v. *Little* (154 N. Y. 147) and *People's Trust Co.* v. *Flynn* (188 id. 385) are authority for calling gifts for specified amounts of net income annuities. The court declared certain gifts annuities and a charge upon the estate and, further, declared that the intention of the testator was carried out. (*Matter of Smathers*, 133 Misc. 812, 816.) It may be said that the gift to the widow in the instant case is a demonstrative legacy, general in form, pointing to a particular fund from which it shall be paid, possessing some of the attributes of a specific legacy, unlike a specific legacy, however, if the fund from which it is directed to be paid is insufficient or no longer exists, as it does not abate but must be paid in full at all events from the general assets of the estate.

Thus is laid this " course of bricks on the secure foundation of the courses laid " by Judge DENIO.

The standard or rule of law applied in this case is consonant with general social control. " It has its origin in a stage in which law, morals, ethical custom and religious usage are undifferentiated."

In the judgment of the court the testator dedicated both income and principal of his estate to the per annum gift to his wife. Otherwise, we would say that either the testator or the law mocked the will with a mere polite phrase not intended to have any efficacy. (*Matter of Crouse*, 244 N. Y. 400, 405.)

I will hold that the widow is entitled to the sum of $150 per month from the net income of the estate, and, if such net income be insufficient, then from the corpus of the estate. In this case the court will reassert and apply the principle laid down in *Pierrepont* v. *Edwards* (*supra*).

Submit decree in accordance with this opinion and decision.